```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                  :
ENRIQUE AFRICA, individually and on behalf of all                 :
others similarly situated,                                        :
                                                                  :
                                    Plaintiff,                    :     21-CV-1419 (JMF)
                                                                  :
                    -v-                                           :     MEMORANDUM OPINION
                                                                  :          AND ORDER
JIANPU TECHNOLOGY INC. et al.,                                    :
                                                                  :
                                    Defendants.                   :
                                                                  :
------------------------------------------------------------------X
```

JESSE M. FURMAN, United States District Judge:

On February 17, 2021, Plaintiff Michael Guttentag filed a putative class action lawsuit on behalf of purchasers of Jianpu Technology Inc. ("Jianpu") securities between May 29, 2018, and February 16, 2021. ECF No. 1 ("Compl."), ¶ 1. The Complaint alleges violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.*, and Rule 10b-5, promulgated thereunder. The same day that Guttentag filed the Complaint, he also published notice of the lawsuit, in accordance with the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(A). *See* ECF No. 6. On April 19, 2021, three motions were filed seeking appointment as lead plaintiff: one by Enrique Africa, ECF No. 15; one by Xiaoming Zhou, ECF No. 18; and one by Yan Qin Li, ECF No. 22. *See* 15 U.S.C. § 78u-4(a)(3)(A) (providing that, "not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class"). On April 28, 2021, Li filed a notice of non-opposition to the competing lead plaintiff motions, ECF No. 29, and the Court later deemed Li's motion withdrawn, ECF No. 33; *see Plaut v. Goldman Sachs Grp., Inc.*, No. 18-CV-12084 (VSB), 2019 WL 4512774, at *3 (S.D.N.Y.

Sept. 19, 2019) (denying motions of parties who filed notices of non-opposition). On May 13, 2021, the Court held a telephone conference on the record to address the remaining two competing lead plaintiff motions, after which the Court reserved judgment.

The PSLRA directs courts to presume that the most adequate lead plaintiff is the movant who, "in the determination of the court, has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii). The statute does not define "largest financial interest," but "courts have generally relied on" four factors identified in *Lax v. First Merchants Acceptance Corp.*, Nos. 97-CV-2715 et al., 1997 WL 461036 (N.D. Ill. Aug. 11, 1997), commonly known as "the *Lax* factors," *Richman v. Goldman Sachs Grp., Inc.*, 274 F.R.D. 473, 475 (S.D.N.Y. 2011); *see, e.g.*, *Hom v. Vale, S.A.*, No. 15-CV-9539 (GHW), 2016 WL 880201, at *3 (S.D.N.Y. Mar. 7, 2016); *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 127-28 (S.D.N.Y. 2011). The four factors are: "(1) the number of shares purchased; (2) the number of net shares purchased; (3) total net funds expended by the plaintiffs during the class period; and (4) the approximate losses suffered by the plaintiffs." *Richman*, 274 F.R.D. at 475. Courts tend to treat the factors in ascending order of importance, with the size of the loss being the most important, but each factor is "only a proxy — and an imperfect one — for determining" which applicant for lead plaintiff has "the largest financial interest." *Id.* at 476.

Here, Zhou claims the largest loss — $48,944.84 — of any movant. *See* ECF No. 19, at 4. But Africa argues that the vast majority of Zhou's losses should not be considered because, following the Supreme Court's decision in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005), courts have recognized that "[l]osses resulting from in-and-out transactions, which took place during the class period, but before the misconduct identified was ever revealed to the

public are not to be included in loss calculations for purposes of selecting lead plaintiff." ECF No. 32, at 4 (quoting *Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 273 (S.D.N.Y. 2015)). "When these transactions are removed from Zhou's loss calculation," Africa argues, "[Zhou's] loss is only $2.61," far less than Africa's $2,307.37. *Id.* at 5. Zhou, in turn, notes that "[n]umerous courts have held that partial corrective disclosures 'enable a plaintiff to prove that it was harmed notwithstanding the fact it sold its shares prior to the complete disclosure of the alleged fraud,'" ECF No. 34 ("Zhou Reply"), at 2 n.1 (quoting *Galmi v. Teva Pharm. Indus. Ltd.*, 302 F. Supp. 3d 485, 501 (D. Conn. 2017)), and that such "[p]artial corrective disclosures are alleged throughout the Complaint," *id.* at 2 (footnote omitted). In the alternative, he also argues it is "not settled case law that being in-and-out automatically disqualified movants from lead plaintiff appointment." *Id.* at 4 (citing *Freudenberg v. E*Trade Fin. Corp.*, Nos. 07-CV-8358 (RWS) et al., 2008 WL 2876373, at *7 (S.D.N.Y. July 16, 2008)). At the May 13th conference, Africa argued that the partial corrective disclosures alleged in the Complaint have no bearing on Zhou's losses because they occurred months before Zhou first purchased any Jianpu shares in October 2020.

The Court agrees with Africa. Although "the appropriateness of employing *Dura* analysis at the lead plaintiff stage" is not entirely settled, *Cook v. Allergn PLC*, No. 18-CV-12089 (CM), 2019 WL 1510894, at *3 (S.D.N.Y. Mar. 21, 2019), the Court agrees with the weight of authority in this Circuit that it "would be abdicating its responsibility under the PSLRA if it were to ignore the issue of loss causation at the lead plaintiff appointment stage," *Sallustro*, 93 F. Supp. 3d at 273 (cleaned up); *accord Micholle v. Ophthotech Corp.*, Nos. 17-CV-210 (VSB) et al., 2018 WL 1307285, at *5 (S.D.N.Y. Mar. 13, 2018); *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER), 2007 WL 680779, at *5 (E.D.N.Y. Mar. 2,

2007), *adhered to on reconsideration*, 2008 WL 820015 (E.D.N.Y. Mar. 25, 2008).  Thus, generally speaking, "[a]ny losses incurred based on 'in-and-out' trades — where an investor buys stock and sells it during the class period but before any disclosures — should not be considered."  *Micholle*, 2018 WL 1307285, at *5 (citing *Topping v. Deloitte Touche Tohmatsu CPA*, 95 F. Supp. 3d 607, 618 (S.D.N.Y. 2015)).[1]  That said, "some courts have been reluctant to apply *Dura* at the appointment-of-lead-plaintiff stage if a case involves multiple disclosures and the analysis of recoverable losses is murky and lacks sufficient evidence."  *City of Sunrise Firefighter's Pension Fund v. Citigroup Inc.*, Nos. 20-CV-9132 (AJN) et al., 2021 WL 396343, at *3 (S.D.N.Y. Feb. 4, 2021); *see also Plaut*, 2019 WL 4512774, at *4 ("Under the circumstances presented here, in which the complaint alleges multiple partial disclosures over the course of the Class Period, courts have been reluctant to apply a *Dura*-based approach to calculating losses.").

Zhou attempts to seize on this latter line of cases in noting that "[p]artial corrective disclosures are alleged throughout the Complaint."  Zhou Reply 2 (footnote omitted).  But as his counsel conceded at the May 13th conference, the only partial corrective disclosures contained in the Complaint occurred well before Zhou first purchased Jianpu securities.  Thus, Zhou relies instead on an event that does not appear in the Complaint: an October 21, 2020 reverse stock

---

[1] Courts are not entirely consistent with respect to whether the exclusion of in-and-out trades affects calculation of the loss amount or is to be considered as part of the adequacy-and-typicality inquiry.  *Compare Micholle*, 2018 WL 1307285, at *5 ("Courts consider only recoverable losses when calculating financial loss for the purpose of selecting lead plaintiff."), *with In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 115 (E.D.N.Y. 2012) ("This sort of concern is not usually raised in the context of who has the largest financial interest, but rather, whether a potential lead plaintiff may suffer from unique adequacy and typicality defenses if it cannot prove a causal connection between the alleged fraudulent conduct and its losses.").  For convenience, the Court here considers the issue as part of the loss calculation, but the outcome would be the same if it were considered as part of the adequacy-and-typicality inquiry.

split that he characterizes as a partial corrective disclosure because it "was within the zone of risk from the concealment of the Company's internal control weaknesses and restatement risk." *Id.* at 4 (citing *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 173 (2d Cir. 2005)). Zhou's argument does not withstand scrutiny.

First, it is unclear whether the Court can even consider the reverse stock split because it is not alleged in the Complaint. *See City of Sunrise*, 2021 WL 396343, at *3 ("Because the lead plaintiff should be the class member who stands to recover the most from that litigation, courts should consider only those losses that will actually be recoverable in the class action and make determinations of largest financial interest *only based on the facts alleged in the complaint*." (emphasis added) (cleaned up)); *In re Comverse*, 2007 WL 680779, at *5 ("*Dura* . . . require[s] a court [on a lead plaintiff motion] to make pre-discovery loss causation determinations regarding asserted claims (or parts of asserted claims) *that are based on the facts alleged in the complaint*." (emphasis added)). "Alleging an additional partial disclosure in subsequent briefings in order to increase the amount of recoverable losses for the purposes of the lead plaintiff analysis is the kind of gamesmanship that is inconsistent with the purposes of [the] PSLRA." *City of Sunrise*, 2021 WL 396343, at *5 (citing *Maliarov v. Eros Int'l PLC*, Nos. 15-CV-8956 (AJN) et al., 2016 WL 1367246, at *4 (S.D.N.Y. Apr. 5, 2016); *Topping*, 95 F. Supp. 3d at 618). Second, even if the Court were permitted to consider the reverse stock split, Zhou's theory is too undeveloped to be appropriately considered at this stage. Zhou's counsel conceded during the May 13th conference that he could point to no authority considering such an event to be a partial corrective disclosure, and the Court has found none. Moreover, Africa's counsel noted without dispute that, as early as May 2019, the market was on notice that Jianpu was not in compliance with New York Stock Exchange listing standards and would need to increase its share price to remain

5

listed. The Court fails to see what additional information was disclosed by the fact of the reverse stock split relevant to the fraud claims alleged in the Complaint.

In light of the foregoing, the Court finds that Africa has the larger financial interest in the relief sought by the class. The Court also finds that Africa satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure, substantially for the reasons stated in his opening brief. *See* ECF No. 16, at 5-7. "Significantly, as part of a PSLRA lead plaintiff motion, the moving plaintiff must make only a preliminary showing that the adequacy and typicality requirements under Rule 23 have been met." *Cortina v. Anavex Life Scis. Corp.*, No. 15-CV-10162 (JMF), 2016 WL 1337305, at *2 (S.D.N.Y. Apr. 5, 2016) (cleaned up). Africa satisfies the typicality requirement because he claims to have suffered losses from Defendants' alleged misconduct during the class period, and he satisfies the adequacy requirement because his interests are aligned with those of the class and he has retained experienced counsel. Accordingly, Africa is appointed as lead plaintiff, and Glancy Prongay & Murray LLP — his counsel — is appointed as lead counsel. Per the Court's Order of March 17, 2021, lead counsel and Defendant shall confer and file a joint letter **no later than one week from the date of this Memorandum Opinion and Order** proposing a schedule going forward. ECF No. 14.

The Clerk of Court is directed to update the docket to reflect the appointment of Africa as lead plaintiff, to conform the docket to the caption of this Memorandum Opinion and Order, and to terminate ECF Nos. 15 and 18.

SO ORDERED.

Dated: May 19, 2021
New York, New York

JESSE M. FURMAN
United States District Judge