UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X

ENRIQUE AFRICA, *individually and on behalf of all others similarly situated*,

                        Plaintiff,

            -v-

JIANPU TECHNOLOGY INC. et al.,

                     Defendants.

---------------------------------------------------------------------X

21-CV-1419 (JMF)

**ECF CASE**
**Electronically Filed**


**REPLY MEMORANDUM OF LAW**
**IN FURTHER SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**


SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Scott D. Musoff
Robert A. Fumerton
Vincent M. Chiappini
Argirios J. Nickas
One Manhattan West
New York, New York 10001
Phone: (212) 735-3000

*Attorneys for Defendants*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................................ ii

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ................................................................................................................................2

I.    PLAINTIFF FAILS TO PLEAD ANY ACTIONABLE FALSITY...................................2

      A.    Plaintiff Fails to Plead Falsity Regarding Jianpu's Loan Business ........................2

      B.    Plaintiff Fails to Plead Falsity Regarding Jianpu's Credit Card Business...............3

      C.    Plaintiff Fails to Plead Falsity Regarding Databook.................................................5

II.   PLAINTIFF FAILS TO PLEAD SCIENTER ..................................................................6

      A.    Plaintiff Fails to Plead Motive and Opportunity.......................................................6

      B.    Plaintiff Fails to Plead Conscious Misbehavior or Recklessness ............................6

            1.    Plaintiff Fails to Plead Scienter for the Loan Business Claim.....................7

            2.    Plaintiff Fails to Plead Scienter for the Credit Card Business Claim .........8

            3.    Plaintiff Fails to Plead Scienter for the Databook Claim...........................10

III.  PLAINTIFF FAILS TO PLEAD LOSS CAUSATION ....................................................10

CONCLUSION...........................................................................................................................10

## TABLE OF AUTHORITIES

Page(s)

### CASES

*In re AOL Time Warner, Inc. Securities & "ERISA" Litigation*,
    381 F. Supp. 2d 192 (S.D.N.Y. 2004)..............................................................................8, 9

*In re AT&T/DirecTV Now Securities Litigation*,
    480 F. Supp. 3d 507 (S.D.N.Y. 2020)...................................................................................2

*In re Atlas Air Worldwide Holdings, Inc. Securities Litigation*,
    324 F. Supp. 2d 474 (S.D.N.Y. 2004)...................................................................................4

*Batwin v. Occam Networks, Inc.*,
    No. CV 07-2750 CAS (SHx), 2008 WL 2676364 (C.D. Cal. July 1, 2008).........................9

*In re Cannavest Corp. Securities Litigation*,
    307 F. Supp. 3d 222 (S.D.N.Y. 2018)...................................................................................9

*In re Cardinal Health Inc. Securities Litigations*,
    426 F. Supp. 2d 688 (S.D. Ohio 2006) .................................................................................9

*In re DRDGOLD Ltd. Securities Litigation*,
    472 F. Supp. 2d 562 (S.D.N.Y. 2007)...................................................................................2

*Fait v. Regions Financial Corp.*,
    655 F.3d 105 (2d Cir. 2011)...................................................................................................5

*Footbridge Ltd. v. Countrywide Home Loans, Inc.*,
    No. 09 Civ. 4050 (PKC), 2010 WL 3790810 (S.D.N.Y. Sept. 28, 2010) .............................3

*In re Francesca's Holdings Corp. Securities Litigation*,
    No. 13-cv-6882 (RJS), 2015 WL 1600464 (S.D.N.Y. Mar. 31, 2015)...............................5

*Fresno County Employees' Retirement Ass'n v. comScore, Inc.*,
    268 F. Supp. 3d 526 (S.D.N.Y. 2017)...............................................................................4, 7

*In re General Electric Securities Litigation*,
    844 F. App'x 385 (2d Cir. 2021) ...........................................................................................7

*In re HEXO Corp. Securities Litigation*,
    524 F. Supp. 3d 283 (S.D.N.Y. 2021)...................................................................................4

*Kalnit v. Eichler*,
    264 F.3d 131 (2d Cir. 2001)...................................................................................................6

*In re Magnum Hunter Resources Corp. Securities Litigation*,
    26 F. Supp. 3d 278 (S.D.N.Y. 2014), *aff'd*, 616 F. App'x 442 (2d Cir. 2015)..........4, 9, 10

*In re Magnum Hunter Resources Corp. Securities Litigation*,
    616 F. App'x 442 (2d Cir. 2015) ...............................................................................7

*McIntire v. China MediaExpress Holdings, Inc.*,
    927 F. Supp. 2d 105 (S.D.N.Y. 2013)........................................................................7

*McKenna v. Smart Technologies Inc.*,
    No. 11 Civ. 7673 (KBF), 2012 WL 1131935 (S.D.N.Y. Apr. 3, 2012) ..............................6

*Menaldi v. Och-Ziff Capital Management Group LLC*,
    164 F. Supp. 3d 568 (S.D.N.Y. 2016).......................................................................6

*Meyer v. Jinkosolar Holdings Co.*,
    761 F.3d 245 (2d Cir. 2014)....................................................................................3

*In re Morgan Stanley Information Fund Securities Litigation*,
    592 F.3d 347 (2d Cir. 2010)....................................................................................3

*In re New Energy Systems Securities Litigation*,
    66 F. Supp. 3d 401 (S.D.N.Y. 2014)........................................................................10

*Oklahoma Firefighters Pension & Retirement System v. Student Loan Corp.*,
    951 F. Supp. 2d 479 (S.D.N.Y. 2013)......................................................................10

*In re OSG Securities Litigation*,
    12 F. Supp. 3d 622 (S.D.N.Y. 2014)..........................................................................9

*Pirnik v. Fiat Chrysler Automobiles, N.V.*,
    No. 15-CV-7199, 2016 WL 5818590 (S.D.N.Y. Oct. 5, 2016)..........................................3

*San Leandro Emergency Medical Group Profit Sharing Plan v. Philip Morris Cos.*,
    75 F.3d 801 (2d Cir. 1996)......................................................................................4

*Schaffer v. Horizon Pharma PLC*,
    No. 16-CV-1763, 2018 WL 481883 (S.D.N.Y. Jan. 18, 2018) ................................2, 7, 10

*Schuler v. NIVS Intellimedia Technology Group, Inc.*,
    No. 11 Civ. 2484 (KMW) (FM), 2013 WL 944777 (S.D.N.Y. Mar. 12, 2013) ................10

*SEC v. China Northeast Petroleum Holdings, Ltd.*,
    27 F. Supp. 3d 379 (S.D.N.Y. 2014).......................................................................6, 8

*SEC v. Stanard*,
    No. 06 Civ. 7736 (GEL), 2009 WL 196023 (S.D.N.Y. Jan. 27, 2009) ..............................8

*In re UBS AG Securities Litigation*,
  No. 07 Civ. 11225 (RJS), 2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012)............................3

*Varghese v. China Shenghuo Pharmaceutical Holdings, Inc.*,
  672 F. Supp. 2d 596 (S.D.N.Y. 2009)................................................................................7

*In re Veeco Instruments, Inc. Securities Litigation*,
  235 F.R.D. 220 (S.D.N.Y. 2006) .......................................................................................9

*Venkataraman v. Kandi Technologies Group, Inc.*,
  No. 20 Civ. 8082 (LGS), 2021 WL 4952260 (S.D.N.Y. Oct. 25, 2021) ........................7, 9

Jianpu Technology Inc., David Ye, and Yilü (Oscar) Chen (collectively, "Defendants")[1] respectfully submit this reply memorandum of law in further support of their motion to dismiss.

## PRELIMINARY STATEMENT

Instead of alleging particularized facts in support of a coherent theory of fraud, the Complaint jumbles together an assortment of allegations concerning unrelated categories of alleged misconduct by unconnected actors spanning multiple years. The only common thread running through the Complaint is the absence of well-pled allegations establishing that any of the alleged misconduct was known to Defendants, or that any of the Company's statements was false when made. Accordingly, the Complaint should be dismissed in its entirety with prejudice.

First, Plaintiff fails to plead, much less with the requisite degree of particularity, that any of the Company's disclosures were false or misleading. Plaintiff's assertion that "Defendants' purported warnings were too general" (Opp. at 14) crumbles in the face of the specific and repeated warnings the Company gave regarding unlawful lender conduct, fraud by employees, the possibility of financial restatement, and data privacy risks—precisely the risks at issue here. The Company also promptly disclosed "bad news" when the risks it had forewarned about materialized.

Second, Plaintiff fails to plead any particularized facts to support a strong inference of scienter. Plaintiff concedes that he does not allege any motive or opportunity for fraud, and there are also no allegations showing Defendants' knowledge or recklessness. Plaintiff fails to plead a single contemporaneous document contradicting any of Defendants' public statements. Instead, Plaintiff's own allegations support the more compelling inference that the Company acted in good faith to improve its compliance program as new compliance risks came to light.

---

[1] Capitalized terms not defined herein have the meanings ascribed to them in the Memorandum of Law in Support of Defendants' Motion to Dismiss ("Opening Brief" or "Br.") (ECF No. 48). "Opposition" or "Opp." refers to the Memorandum of Law in Opposition to Defendants' Motion to Dismiss. (ECF No. 52.) All citations and internal quotation marks are omitted, and all emphases in quotations are added, unless otherwise indicated.

Finally, Plaintiff fails to plead loss causation.  All relevant risks were fully disclosed, and there was no "corrective disclosure" that preceded, let alone caused, any stock drop.

## ARGUMENT

### I.    PLAINTIFF FAILS TO PLEAD ANY ACTIONABLE FALSITY[2]

#### A.    Plaintiff Fails to Plead Falsity Regarding Jianpu's Loan Business

The Opposition confirms that Plaintiff's allegation of fraud about Jianpu's Loan Business rests on a single alleged incident involving an unknown third-party lender that, at some unknown time, purportedly used Jianpu's platform to solicit a borrower to take out an allegedly improper loan.  (Br. at 11–12; AC ¶ 41.)  Even indulging the unsupported assumption that the alleged conduct happened during the Class Period, the Opposition itself admits that allegations of "isolated fraudulent conduct . . . which had no impact on [] financial statements, [do] not constitute fraud." (Opp. at 14); *see In re AT&T/DirecTV Now Sec. Litig.*, 480 F. Supp. 3d 507, 527 (S.D.N.Y. 2020) ("[F]ailure to disclose anecdotal incidents of . . . isolated . . . misconduct is not material.").

Nonetheless, Plaintiff asserts that Jianpu made a "public admission and apology" when the above-described alleged incident came to light, thereby conceding the falsity of its prior disclosures.  (Opp. at 10.)  But the Company did no such thing.  After a CCTV broadcast mentioned the above incident, the Company merely repeated the same risk disclosed in its prior filings: "Although the Company implements stringent standards to screen financial services providers . . . we cannot rule out the possibility that the quality of the financial products and the services provided

---

[2]    In his recitation of the applicable legal standard (Opp. at 7), Plaintiff fails to mention that heightened pleading standards apply to his Section 10(b) claim, where each element must be pled with particularity, including "the who, what, when, where, and how: the first paragraph of any newspaper story." *In re DRDGOLD Ltd. Sec. Litig.*, 472 F. Supp. 2d 562, 567 (S.D.N.Y. 2007).  Plaintiff's failure to acknowledge, much less to meet, this standard is "unsurprising," where "[a]ll of the conduct alleged is on the part of" third parties—lenders, rogue employees, and a subsidiary's subsidiary—whose actions were not within the knowledge or control of Defendants. *Schaffer v. Horizon Pharma PLC*, No. 16-CV-1763, 2018 WL 481883, at *7 (S.D.N.Y. Jan. 18, 2018) (Furman, J.).

by financial services providers are not in full compliance . . . at all times." (AC ¶ 50; *see* Br. at 3–4 (describing substantively identical prior disclosures).)  Far from establishing liability, the risk disclosures the Company made before the CCTV broadcast warned of the precise risks that later materialized and foreclose any possibility of liability.  (Br. at 10–11.)[3]

Next, Plaintiff argues that because Jianpu's announcements of quarterly financial results in 2018 mentioned the Loan Business, those disclosures "triggered a duty to disclose" the incident uncovered by the March 2019 CCTV broadcast.  (Opp. at 11.)  However, the Complaint does not allege **when** the misconduct occurred at all, let alone that it contributed to 2018 financials.  (AC ¶ 41.)  Moreover, Plaintiff's own cited cases hold that the duty to make "complete and accurate" disclosures does "not trigger a generalized duty . . . to disclose the entire corpus of [defendants'] knowledge" or "commonly understood risks," *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 366 (2d Cir. 2010), including the obvious fact that "100% compliance . . . may often be unobtainable," *Meyer v. Jinkosolar Holdings Co.*, 761 F.3d 245, 251 (2d Cir. 2014).[4]

### B.    Plaintiff Fails to Plead Falsity Regarding Jianpu's Credit Card Business

Seizing on the Company's restatement of financial results in 2021 after the conclusion of the Audit Committee-led internal review into the Company's Credit Card Business, Plaintiff

---

[3]    For each of his claims, Plaintiff contends Jianpu's abundant risk disclosures were "too general" and hypothetical. (Opp. at 14–15.)  In fact, the Company consistently warned of the specific risks relating to unscrupulous lenders and their products, employee fraud, restatement, and data privacy. (Br. at 3–6.)  These disclosures both foreclose Plaintiff's claim with respect to falsity (Br. at 10–18), and undermine any inference of scienter, *see Footbridge Ltd. v. Countrywide Home Loans, Inc.*, No. 09 Civ. 4050 (PKC), 2010 WL 3790810, at *20 (S.D.N.Y. Sept. 28, 2010) ("Defendants' disclosures about the risk[s] . . . are inconsistent with" scienter).

[4]    The Opposition does not meaningfully respond to, and thus "concede[s] . . . by silence," *In re UBS AG Sec. Litig.*, No. 07 Civ. 11225 (RJS), 2012 WL 4471265, at *18 n.18 (S.D.N.Y. Sept. 28, 2012), the arguments that (i) the alleged conduct was not carried out by Defendants and could not have rendered their compliance statements false; (ii) accurate historical data does not give rise to a securities claim; (iii) the challenged statements are unrelated to the alleged conduct; and (iv) the challenged statements are either inactionable puffery or opinion statements.  (Br. at 12–13.)  To the extent Plaintiff relies on *Pirnik v. Fiat Chrysler Automobiles, N.V.*, No. 15-CV-7199, 2016 WL 5818590 (S.D.N.Y. Oct. 5, 2016) (Furman, J.), the case is inapposite.  The statements at issue in that case, unlike here, contained "specific representation[s]" of compliance, and actual knowledge was pled based on "[regulator's] direct correspondence to [defendant's] top executives." *Id.* at *6–7; (*see* Opp. at 11–12.)

3

claims that Jianpu's restatement alone is sufficient to establish the falsity.  (Opp. at 8.)  But this is not the law.  "A statement that was believed to be true when made, but was later shown to be false, is insufficient; there is no actionable falsity in such a circumstance."  *In re Magnum Hunter Res. Corp. Sec. Litig.*, 26 F. Supp. 3d 278, 290 (S.D.N.Y. 2014), *aff'd*, 616 F. App'x 442 (2d Cir. 2015). Even when a company deems it prudent or necessary to restate prior earnings, courts have found no actionable falsity where a plaintiff fails to plead that the prior statements "were known to be false at the time made," particularly where defendants warned of the risks that led to the restatement.  *Id.* at 295 (defendant "acknowledged that it might 'identify additional material weaknesses'"); *see In re HEXO Corp. Sec. Litig.*, 524 F. Supp. 3d 283, 311 (S.D.N.Y. 2021) (no falsity despite restatement where "adjustments appear to be reactionary to new information").[5]

Here, (i) the Complaint ***admits*** that Defendants did not "kn[o]w about or participate[] in any of the questionable transactions" by rogue employees (AC ¶ 72), and (ii) there is no dispute that Jianpu expressly and repeatedly warned of the potential for employee fraud and the possibility of financial restatements (Br. at 4–5).  Plaintiff's concessions readily distinguish this case from Plaintiff's cited authorities, where the restatements resulted from a failure "to take into account ***information that was available to [defendants]*** when those results were issued," *In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*, 324 F. Supp. 2d 474, 494 (S.D.N.Y. 2004), and where the defendants "***plainly did not warn investors*** about the relevant risk that led to the restatement," *Fresno Cnty. Emps.' Ret. Ass'n v. comScore, Inc.*, 268 F. Supp. 3d 526, 548 (S.D.N.Y. 2017).

Similarly, Plaintiff's "related-party transactions" argument fails (Opp. at 9), as he ***admits***

---

[5]    Plaintiff claims *Magnum Hunter* is inapposite as it involved a "modest," and thus immaterial, restatement.  (Opp. at 14 n.12.)  However, "without contemporaneous falsity," even a material misstatement is inactionable.  *Magnum Hunter*, 26 F. Supp. 3d at 290; *see San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 813 (2d Cir. 1996) (material omission inactionable absent showing that statements "were not based on the facts available . . . at the time the statements were made").

rogue employees *altered documents* to *hide* the "undisclosed relationships" from Defendants, and there was no evidence that Defendants otherwise "knew about or participated in any of the questionable transactions."[6]  (AC ¶ 72.)

### C.    Plaintiff Fails to Plead Falsity Regarding Databook

Acknowledging that the Company immediately recorded a USD36.6 million impairment charge in December 2019 after the Chinese authorities initiated an investigation into Hangzhou Scorpion, a subsidiary of Databook that Jianpu acquired more than a year prior, Plaintiff nonetheless argues the disclosure accompanying the impairment charge was defective for failure to make additional disclosures allegedly required by accounting rule ASC 450.  (Opp. at 12.)

Plaintiff's claim fails because it is a classic example of inactionable hindsight pleading. (Br. at 14.)  By its own terms, as Plaintiff alleges, ASC 450 only applies—and whatever additional disclosures it calls for are only triggered—if the loss is either "probable" and "reasonably estimated," or "reasonably possible."  (AC ¶ 99.)  Here, the actual loss (USD4.3 million in fines imposed by a Chinese court) was not incurred until January 2021, *over a year after* Jianpu recorded the impairment in an abundance of caution.  (AC ¶¶ 93, 96.)  Plaintiff alleges no facts showing that Jianpu could have known what the Chinese regulators' investigation would show, much less that Jianpu knew that a criminal fine was "probable," estimable, or even "reasonably possible" given the information available to it at the time.  (AC ¶ 99.)  Where, as here, Plaintiff fails to plead particularized facts showing that Jianpu's accounting judgment was both objectively false and disbelieved when made, his disagreement with Jianpu's application of accounting rules is not a basis for a securities fraud claim.  *See Fait v. Regions Fin. Corp.*, 655 F.3d 105, 110 (2d Cir. 2011).

---

[6]    Moreover, in contrast to the cases he cites (Opp. at 9), Plaintiff does not plead particularized facts regarding the amounts, parties, or timing of the alleged transactions and whether they would have "triggered a disclosure obligation under Item 404."  *In re Francesca's Holdings Corp. Sec. Litig.*, No. 13-cv-6882 (RJS), 2015 WL 1600464, at *15 (S.D.N.Y. Mar. 31, 2015); (AC ¶¶ 174–75.)

Furthermore, the Company's decision to record an impairment and disclose its cause (an "adverse development of [a subsidiary's] business" (AC ¶ 86)), even before knowing the results of the Chinese authorities' investigation, squarely forecloses Plaintiff's claim that the Company failed to make "appropriate disclosure[s]" (Opp. at 12). It is hard to fathom what more Jianpu could have disclosed, particularly where, as here, Plaintiff does not dispute that Jianpu did not owe any generalized duty to disclose the Chinese authorities' investigation. (Br. at 17.) Tellingly, other than faulting the Company's lack of clairvoyance, Plaintiff provides no answer.[7]

## II.    PLAINTIFF FAILS TO PLEAD SCIENTER

### A.    Plaintiff Fails to Plead Motive and Opportunity

Unable to identify some "concrete and personal benefit" that accrued to a defendant, which is necessary to establish a motive for fraud, Plaintiff misstates the law, arguing that the "concrete benefit standard" does not apply. (Opp. at 16 n.15.) But the sole case he cites holds just the opposite: "[A] plaintiff *must allege* that the defendant benefitted in some *concrete and personal way*." *SEC v. China Ne. Petroleum Holdings, Ltd.*, 27 F. Supp. 3d 379, 388 (S.D.N.Y. 2014). It also holds that, where a plaintiff relies on alleged related-party transactions to establish motive, the plaintiff must allege facts showing related transactions between the defendant-company and the individual defendants and their family members—facts plainly not pled here. *Id.* at 389.

### B.    Plaintiff Fails to Plead Conscious Misbehavior or Recklessness

Absent any allegations of motive or opportunity, Plaintiff must make a correspondingly stronger showing of Defendants' conscious misbehavior and recklessness. *Kalnit v. Eichler*, 264

---

[7]    In contrast to the statements made by Jianpu, which warned of adverse events, Plaintiff's cited cases involved affirmative statements that reassured investors, despite defendants' knowledge of contrary facts. *Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*, 164 F. Supp. 3d 568, 584 (S.D.N.Y. 2016) (statement that defendant "was not facing an investigation . . . when, in fact, it was" was misleading); *McKenna v. Smart Techs. Inc.*, No. 11 Civ. 7673 (KBF), 2012 WL 1131935, at *13 (S.D.N.Y. Apr. 3, 2012) (statements "touting" an acquisition were rendered misleading by omission of facts required to be disclosed under Item 303).

F.3d 131, 142 (2d Cir. 2001). Fatally, Plaintiff does not identify any document, meeting, or other specific information that would or could have revealed the alleged fraud to any Defendant earlier than Jianpu's public announcements. *Schaffer*, 2018 WL 481883, at *12. The opposing nonfraudulent inference—that Jianpu was "in a constant game of 'Catch up,'" acknowledging and remediating compliance issues as they were identified—is substantially more compelling. *In re Magnum Hunter Res. Corp. Sec. Litg.*, 616 F. App'x 442, 445 (2d Cir. 2015).

### 1. Plaintiff Fails to Plead Scienter for the Loan Business Claim

With respect to his Loan Business claim, Plaintiff's reliance on Director Fan's resignation "shortly after the CCTV report" and on the CCTV broadcast itself cannot raise a strong inference of scienter. (Opp. at 21–22.) First, allegations based "only [on] the timing of [a] resignation," like Plaintiff's here, "do[] not support an inference of scienter" as a matter of law. *Venkataraman v. Kandi Techs. Grp., Inc.*, No. 20 Civ. 8082 (LGS), 2021 WL 4952260, at *5 (S.D.N.Y. Oct. 25, 2021).[8] Second, nothing in the CCTV broadcast suggests Defendants' knowledge. The Complaint alleges that "714 Missile businesses"—businesses making loans due in 7 or 14 days with high interest rates—"know about their illegal practices," but it does not allege that Jianpu is a 714 Missile business. (AC ¶¶ 42, 47.) Indeed, CCTV reported (and the Complaint confirms) that these 714 Missile businesses are third-party lenders—not companies like Jianpu that match borrowers with lenders. (AC ¶¶ 25, 42; Ex. E at 1:58:37.) That the Company promptly suspended downloads of its app after the CCTV broadcast to investigate and terminate untrustworthy lenders supports the more compelling inference that the Company acted in good faith. *See In re Gen. Elec. Sec.*

---

[8] Plaintiff's cases involve allegations other than timing alone and thus, are inapposite. *See Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 672 F. Supp. 2d 596, 603, 608 (S.D.N.Y. 2009) (resignation admitted "poor corporate governance"); *McIntire v. China MediaExpress Holdings, Inc.*, 927 F. Supp. 2d 105, 117 (S.D.N.Y. 2013) (resignation cited "concerns with the 'conduct of CCME's management'"); *Fresno*, 268 F. Supp. 3d at 553 (resignations contradicted prior representation that directors would remain on the board of directors).

*Litig.*, 844 F. App'x 385, 389 (2d Cir. 2021) (that defendant "revised its assessment of the issue and its solution when confronted with . . . failure" supports "non-culpable inference").

### 2.  Plaintiff Fails to Plead Scienter for the Credit Card Business Claim

With respect to the Credit Card Business claim, Plaintiff does not dispute the Audit Committee-led investigation's finding that the misconduct was carried out by certain low-level employees who, hoping for "inflated sales commissions," "improperly altered supporting documents" to conceal "undisclosed relationships" with related parties and that there was no evidence that Defendants "***knew about or participated in any of the questionable transactions***." (AC ¶ 72.)  In other words, there is nothing to suggest that management knew, or was reckless in not knowing, about the employees' fraud.  Seeking to avoid this ineluctable conclusion, Plaintiff indiscriminately cites authorities purporting to show that "undisclosed related party transactions," "accounting violations," and "internal control deficiencies" can give rise to an inference of scienter in some circumstances.  (Opp. at 16–21.)  But none of those circumstances are present here.

First, Plaintiff's "related-party transaction" cases all involve transactions that were initiated or authorized by the defendants.[9]  (Opp. at 16–18.)  Here, in contrast, the Complaint does not allege that any Defendant knew about or was involved in any related-party transactions.  Indeed, the internal review finding—unchallenged by Plaintiff—was that Defendants were deliberately kept in the dark by the offending employees' intentional attempt to "alter[] supporting documents" to hide the "***undisclosed*** relationships" with related parties from their supervisors.  (AC ¶ 72.)

Second, for similar reasons, Plaintiff's "accounting violations" cases, all of which involved

---

[9]     *See China Ne. Petroleum*, 27 F. Supp. 3d at 385 (transactions were "authorized" and "effected" by defendants); *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, 381 F. Supp. 2d 192, 226 (S.D.N.Y. 2004) (defendant "was the architect of sixteen separate sham transactions"); *SEC v. Stanard*, No. 06 Civ. 7736 (GEL), 2009 WL 196023, at *28 (S.D.N.Y. Jan. 27, 2009) (SEC established at trial that defendant "wanted to engage in" sham transaction).

allegations that defendants perpetrated the alleged fraud, ignored red flags, or engaged in insider trading, are inapposite.[10]  (Opp. at 18–19.)  Unlike those cases, the alleged accounting issues here are precisely the type to "commonly occur inadvertently" (*id.* at 18), where low-level employees misled management to line their own pockets at the Company's expense (AC ¶ 72).[11]  Plaintiff alleges no facts to show that these employees' actions would have been uncovered by tracking or verifying "new financial institutions" on Jianpu's platform.  (Opp. at 20); *see Venkataraman*, 2021 WL 4952260, at *3 ("the more compelling inference is that the errors in the financial statements were made unwittingly and without knowledge or reckless disregard").

Third, Plaintiff's "internal controls" cases (Opp. at 20–21), which all involve specific allegations of knowledge, likewise do not support an inference of scienter here.[12]  As shown in the Opening Brief, Jianpu repeatedly warned that "***certain of our own employees may be corrupted and participate in fraudulent or otherwise illegal activities***," that our "***fraud detection tools and risk management system may be insufficient*** to accurately detect and timely prevent fraud and misconduct," and that "[i]f we fail to achieve and maintain an effective internal control

---

[10]  *See In re Veeco Instruments, Inc. Sec. Litig.*, 235 F.R.D. 220, 231 (S.D.N.Y. 2006) (defendants "allegedly refused to permit Veeco's financial statements to reflect charges to income required to fairly reflect accruals for warranty losses"); *In re Cardinal Health Inc. Sec. Litigs.*, 426 F. Supp. 2d 688, 723, 727 (S.D. Ohio 2006) ("Plaintiffs . . . do not end their allegations with GAAP violations" and alleged $50 million in insider trading); *AOL*, 381 F. Supp. 2d at 240 ("late-in-the-quarter revenue recognition" made "just in time to permit [defendant] to hit its . . . targets").

[11]  Plaintiff claims that the "increased credit card revenue was [altered] *just enough* to meet or exceed its overall revenue guidance," but Plaintiff's shifting baselines betray the incoherence of this theory: revenue was supposedly altered first to "substantially exceed[]" the guidance, then only enough to meet the guidance's low end, and then again to exceed the top end of the guidance.  (Opp. at 18–19; AC ¶ 80.)  The more cogent and compelling inference is that rogue employees effected these transactions to "inflate[] sales commissions," increasing revenue by inconsistent amounts each quarter.  (AC ¶ 72.)  Defendant Ye's optimistic statements also do not establish scienter (Opp. at 19), as "[m]anagement's optimism that is shown only after the fact to have been unwarranted does not, by itself, give rise to an inference of fraud."  *Magnum Hunter*, 26 F. Supp. 3d at 299.

[12]  *See, e.g.*, *In re Cannavest Corp. Sec. Litig.*, 307 F. Supp. 3d 222, 245–46 (S.D.N.Y. 2018) ("errors" in accounting "were obvious" and CW told defendants of the need for a restatement); *In re OSG Sec. Litig.*, 12 F. Supp. 3d 622, 632 (S.D.N.Y. 2014) ("senior management" "explicitly discussed" undisclosed tax liability and "withheld" documents).  In *Batwin v. Occam Networks, Inc.*, No. CV 07-2750 CAS (SHx), 2008 WL 2676364, at *13 (C.D. Cal. July 1, 2008), defendants "terminated" their auditor after it identified internal control deficiencies.  Here, in contrast, the Audit Committee retained professional advisers to investigate the Credit Card Business.  (Ex. I at 1.)

environment," "*[w]e may also be required to restate our financial statements from prior periods*." (Br. at 4–5.)  Jianpu's candid acknowledgment of potential shortcomings in its internal controls negates any inference of scienter.  *See Magnum Hunter*, 26 F. Supp. 3d at 298.

### 3.     Plaintiff Fails to Plead Scienter for the Databook Claim

Plaintiff concedes that the "mere existence" of the investigation into Hangzhou Scorpion "is insufficient to show a strong inference of scienter" (Opp. at 22 n.20), and alleges no other facts supporting scienter with respect to his Databook claim.

## III.     PLAINTIFF FAILS TO PLEAD LOSS CAUSATION

Contrary to Plaintiff's argument that its risk disclosures were somehow insufficient, Jianpu disclosed the ***precise*** risks that later materialized.  (*See supra* § I.)  Hence, his claim improperly relies upon the "materialization of a known risk, rather than the disclosure of a concealed one, [which] is not a plausible theory of loss causation."[13]  *In re New Energy Sys. Sec. Litig.*, 66 F. Supp. 3d 401, 406 n.33 (S.D.N.Y. 2014).  Moreover, Plaintiff does not dispute that the timing of his trades renders it impossible for him to prove loss causation.  (Br. at 24.)  Although he insists that these are "class certification argument[s]" (Opp. at 24), courts in this Circuit have dismissed complaints on this basis at the pleading stage, *Schuler v. NIVS Intellimedia Tech. Grp., Inc.*, No. 11 Civ. 2484 (KMW) (FM), 2013 WL 944777, at \*10 (S.D.N.Y. Mar. 12, 2013).

### CONCLUSION

For the reasons stated here and in the Opening Brief, the Complaint should be dismissed in its entirety with prejudice.[14]

---

[13]   Although the existence of an alternative cause of the alleged loss may not be dispositive in all cases (Opp. at 23), Plaintiff has "not established defendants' failure to disclose any information" and his failure to consider the "general downward trend" of Jianpu's ADS price further supports dismissal.  *Okla. Firefighters Pension & Ret. Sys. v. Student Loan Corp.*, 951 F. Supp. 2d 479, 503 (S.D.N.Y. 2013).

[14]   Because Plaintiff fails to plead a primary violation under Section 10(b), his control person liability claims under Section 20(a) must fail as well.  *See Schaffer*, 2018 WL 481883, at \*15.

Dated: New York, New York
      November 17, 2021

                        Respectfully submitted,


                        /s/ Robert A. Fumerton

                        Scott D. Musoff

                        Robert A. Fumerton

                        Vincent M. Chiappini

                        Argirios J. Nickas

                        SKADDEN, ARPS, SLATE,
                          MEAGHER & FLOM LLP

                        One Manhattan West

                        New York, New York 10001

                        Phone: (212) 735-3000

                        Fax:    (212) 735-2000

                        scott.musoff@skadden.com

                        robert.fumerton@skadden.com

                        vinnie.chiappini@skadden.com

                        argirios.nickas@skadden.com

                        *Attorneys for Defendants*