**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MICHAEL GUTTENTAG, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>JIANPU TECHNOLOGY INC., DAVID YE, and YILÜ (OSCAR) CHEN,<br><br>Defendants. | Case No. 1:21-cv-01419-JMF |

**ENRIQUE AFRICA'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED
<u>CLASS ACTION COMPLAINT</u>**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................... 1

I.      FACTUAL BACKGROUND ........................................................................................ 2

        A.      Defendants' Scheme to Inflate Revenue in Jianpu's Credit Card Segment Stemmed From An Entity Partially Owned by Ye's Wife...................................................... 2

II.     APPLICABLE LEGAL STANDARDS DISFAVOR DISMISSAL ................................. 3

III.    AFRICA STATES A CLAIM UNDER RULE 10B-5(a),(c) ............................................ 4

        A.      Africa's Scheme Claim Is Not Before The Court On Defendants' Motion............ 4

        B.      Africa States a Scheme Claim Under 10b-5(a),(c) With At Least Three Theories................................................................................................................ 7

                1.      Disseminating A False Statement Is Sufficient Conduct To Allege A Scheme Claim.................................................................................................. 7

                2.      Africa's Allegations Of Related Party Transactions Also State A Scheme Claim.................................................................................................. 7

                3.      An Earnings Management Scheme Is Actionable Under 10b-5(a),(c) ....... 8

IV.     AFRICA SAC STATES A CLAIM UNDER 10b-5(b)..................................................... 9

        A.      Defendants Made False Statements About The Company's Credit Card Segment................................................................................................................ 9

                1.      The Company's Restatement Constitutes an Admission that its Financial Results Were Materially False When They Were Issued .......................... 9

                2.      Jianpu's Related Party Transaction Disclosures Were Misleading .......... 10

                3.      Defendants' Factual Arguments Are Improper, Flawed, And Premature ............................................................................................... 11

        B.      Defendants Made False Statements About The Company's Databook Segment . 14

        C.      Plaintiff Alleged Falsity Under Item 303............................................................ 16

        D.      Plaintiff Adequately Alleged Scienter ............................................................... 18

1.    Undisclosed Related Party Transactions Create Sufficient Motive .......... 19

2.    That The Accounting Violations Were Used to Both Manipulate Revenue and Meet Revenue Guidance Independently Evince Conscious Misbehavior  19

3.    The "little r restatements" Strengthen An Inference Of Scienter ............. 21

4.    Internal Control Deficiencies Contribute to a Strong Inference of Scienter ....................................................................................................... 21

5.    The Resignations Here Support Scienter .................................................. 22

V.    PLAINTIFF ADEQUATELY ALLEGED LOSS CAUSATION ................................... 23

VI.    CONCLUSION ................................................................................................................ 25

# TABLE OF AUTHORITIES

CASES

*Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*,
    *19* F.4th 145 (2d Cir. 2021) ....................................................................................... 11

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................... 3, 4

*Batwin v. Occam Networks, Inc.*,
    No. CV 07-2750 CAS (SHX), 2008 WL 2676364 (C.D. Cal. July 1, 2008) ........................... 22

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ......................................................................................................... 4

*Brown v. China Integrated Energy, Inc.*,
    875 F. Supp. 2d 1096 (C.D. Cal. 2012) ...................................................................... 10

*Caiafa v. Sea Containers Ltd.*,
    525 F. Supp. 2d 398 (S.D.N.Y. 2007) ........................................................................ 10

*City of Austin Police Ret. Sys. v. Kinross Gold Corp.*,
    957 F. Supp. 2d 277 (S.D.N.Y. 2013) ........................................................................ 12

*City of Livonia Employees' Ret. Sys. v. Wyeth*,
    284 F.R.D. 173 (S.D.N.Y. 2012) ................................................................................ 24

*City of Pontiac Gen. Employees' Ret. Sys. v. Lockheed Martin Corp.*,
    875 F. Supp. 2d 359 (S.D.N.Y. 2012) ........................................................................ 18

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005) ..................................................................................................... 23

*Emergent Cap. Inv. Mgmt., LLC v. Stonepath Grp., Inc.*,
    343 F.3d 189 (2d Cir. 2003) ........................................................................................ 23

*Ernst Haas Studio, Inc. v. Palm Press, Inc.*,
    164 F.3d 110 (2d Cir. 1999) .......................................................................................... 6

*Fresno Cty. Employees' Ret. Ass'n v. comScore, Inc.*,
    268 F. Supp. 3d 526 (S.D.N.Y. 2017) ........................................................................ 10

*Gen. Motors LLC Ignition Switch Litig.*,
    2015 WL 7769524 (S.D.N.Y. Nov. 30, 2015) .............................................................. 5

*Georgia Firefighters' Pension Fund v. Anadarko Petroleum Corp.*,
514 F. Supp. 3d 942 (S.D. Tex. 2021) ................................................................. 5

*Gruber v. Gilbertson*,
No. 16CV9727, 2018 WL 1418188 (S.D.N.Y. Mar. 20, 2018)................................. 25

*Gruber v. Gilbertson*,
No. 16CV9727, 2019 WL 4439415 (S.D.N.Y. Sept. 17, 2019) ............................... 24

*Hoexter v. Simmons*,
140 F.R.D. 416 (D. Ariz. 1991) ........................................................................... 24

*IBEW Loc. 90 Pension Fund v. Deutsche Bank AG*,
No. 11 CIV. 4209 KBF, 2013 WL 1223844 (S.D.N.Y. Mar. 27, 2013)................................ 7, 9

*In re Alphabet, Inc. Sec. Litig.*,
1 F.4th 687 (9th Cir. 2021) ................................................................................. 4

*In re AOL Time Warner, Inc. Sec. and ERISA Litig.*,
381 F. Supp. 2d 192 (S.D.N.Y. 2004)................................................................ 19, 20

*In re Aqua Metals, Inc. Sec. Litig.*,
No. 17-CV-07142-HSG, 2019 WL 3817849 (N.D. Cal. Aug. 14, 2019) ................................... 5

*In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*,
324 F. Supp. 2d 474 (S.D.N.Y. 2004)................................................................ 10, 21

*In re Barclays Liquidity Cross & High Frequency Trading Litig.*,
390 F. Supp. 3d 432 (S.D.N.Y. 2019)................................................................ 8

*In re Cannavest Corp. Sec. Litig.*,
307 F. Supp. 3d 222 (S.D.N.Y. 2018)................................................................ 21

*In re Carter-Wallace, Inc. Sec. Litig.*,
220 F.3d 36 (2d Cir. 2000)................................................................................ 19

*In re DRDGOLD Ltd. Sec. Litig.*,
472 F. Supp. 2d 562 (S.D.N.Y. 2007)................................................................ 7, 9

*In re Eletrobras Sec. Litig.*,
245 F. Supp. 3d 450 (S.D.N.Y. 2017)................................................................ 9

*In re Gilat Satellite Networks, Ltd.*,
2005 WL 2277476 (E.D.N.Y. Sept. 19, 2005) ...................................................... 20

*In re Glob. Crossing, Ltd. Sec. Litig.*,
  322 F. Supp. 2d 319 (S.D.N.Y. 2004) ............................................................................. 9

*In re Henry Schein, Inc. Sec. Litig.*,
  2019 WL 8638851 (E.D.N.Y. Sept. 27, 2019) ........................................................... 23

*In re Lehman Bros. Inc.,*
  No. 11-cv-6052, 2015 WL 1822646 (S.D.N.Y. Apr. 22, 2015) ................................... 6

*In re Montage Tech. Grp. Ltd. Sec. Litig.*,
  78 F. Supp. 3d 1215 (N.D. Cal. 2015) ...................................................................... 10

*In re Motors Liquidation Co.*,
  No. 20-CV-3093 (JMF), 2021 WL 1085362 (S.D.N.Y. Mar. 22, 2021) ..................... 5

*In re Nielsen Holdings PLC Sec. Litig.*,
  510 F. Supp. 3d 217 (S.D.N.Y. 2021)................................................................... 16, 18

*In re OSG Sec. Litig.*,
  12 F. Supp. 3d 622 (S.D.N.Y. 2014)......................................................................... 22

*In re Parmalat Securities Litigation*,
  376 F. Supp. 2d 472 (S.D.N.Y. 2005)......................................................................... 8

*In re Symbol Techs*,
  2015 WL 3915477 ..................................................................................................... 24

*In re Veeco Instruments, Inc. Sec. Litig.*,
  235 F.R.D. 220 (S.D.N.Y. 2006) ............................................................................... 20

*In re VeriSign, Inc.*,
  No. C 02-02270 JW(PVT), 2005 WL 88969 (N.D. Cal. Jan. 13, 2005)..................... 24

*In re Vivendi Universal, S.A. Sec. Litig.*,
  2009 WL 10695884 (S.D.N.Y. Apr. 6, 2009).......................................................... 23

*Ind. Pub. Ret. Sys. v. AAC holdings, Inc.*,
  2021 WL 1316705 (M.D. Tenn. Apr. 8, 2021).......................................................... 5

*JAC Holding Enterprises, Inc. v. Atrium Cap. Partners, LLC*,
  997 F. Supp. 2d 710 (E.D. Mich. 2014).................................................................... 6

*Khoja v. Orexigen Therapeutics, Inc.*,
  899 F.3d 988 (9th Cir. 2018) ................................................................................... 11

*Lentell v. Merrill Lynch & Co.*,
   396 F.3d 161 (2d Cir. 2005).................................................................................. 24

*Litwin v. Blackstone Grp., L.P.*,
   634 F.3d 706 (2d Cir. 2011)............................................................................ 16, 17

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
   797 F.3d 160 (2d Cir. 2015).................................................................................. 23

*Lorenzo v. SEC*,
   139 S. Ct. 1094 (2019)..................................................................................... 1, 7

*Luce v. Edelstein*,
   802 F.2d 49 (2d Cir. 1986).................................................................................. 25

*Matrixx Initiatives, Inc. v. Siracusano*,
   563 U.S. 27 (2011)................................................................................................ 9

*McCurdy v. SEC*,
   396 F.3d 1258 (D.C.Cir. 2005) ........................................................................... 19

*McIntire v. China MediaExpress Holdings, Inc.*,
   927 F. Supp. 2d 105 (S.D.N.Y. 2013).................................................................. 23

*McKenna v. SMART Techs. Inc.*,
   2012 WL 1131935 (S.D.N.Y. Apr. 3, 2012).......................................................... 15

*Menaldi v. Och-Ziff*,
   164 F. Supp. 3d 568 (S.D.N.Y. 2016).................................................................. 15

*Metz v. U.S. Life Ins. Co. in the City of New York*,
   662 F.3d 600 (2d Cir. 2011).................................................................................. 3

*Moab Partners, L.P. v. Macquarie Infrastructure Corp.*,
   No. 21-2524, 2022 WL 17815767 (2d Cir. Dec. 20, 2022)......................... 16, 17, 18

*Morgan v. Sundance, Inc.*,
   142 S. Ct. 1708 (2022) ......................................................................................... 6

*Novak v. Kasaks*,
   216 F.3d 300 (2d Cir. 2000).................................................................................. 18

*Panther Partners Inc. v. Ikanos Commc'ns, Inc.*,
   681 F.3d 114 (2d Cir. 2012)............................................................................ 16, 17

*Place Retail Stores Inc.*,
    580 F. Supp. 2d 212 (S.D.N.Y. 2008) .................................................................................. 22

*Plumbers & Pipefitters Nat'l Pension Fund v. Davis*,
    No. 1:16-CV-3591-GHW, 2020 WL 1877821 (S.D.N.Y. Apr. 14, 2020) ............................... 22

*Rombach v. Chang*,
    355 F.3d 164 (2d Cir. 2004) ................................................................................................ 18

*Ross v. Abercrombie & Fitch Co.*,
    257 F.R.D. 435 (S.D. Ohio 2009) ........................................................................................ 24

*Schaffer v. Horizon Pharma PLC*,
    No. 16-CV-1763 (JMF), 2018 WL 481883 (S.D.N.Y. Jan. 18, 2018) .................................... 18

*SEC v. Am. Growth Funding II, LLC*,
    2018 WL 6322145 (S.D.N.Y. Dec. 4, 2018) ........................................................................ 17

*SEC v. China Ne. Petroleum Holdings Ltd.*,
    27 F. Supp. 3d 379 (S.D.N.Y. 2014) .......................................................................... 8, 10, 19

*SEC v. Das*,
    2010 WL 4615336 (D. Neb. Nov. 4, 2010) .................................................................. *passim*

*SEC v. Rio Tinto plc*,
    41 F.4th 47 (2d Cir. 2022) .................................................................................................... 1

*SEC v. Stanard*,
    No. 06 CIV 7736(GEL), 2009 WL 196023 (S.D.N.Y. Jan. 27, 2009) ................................... 19

*SEC v. Winemaster*,
    529 F. Supp. 3d 880 (N.D. Ill. 2021) .............................................................................. 20, 21

*Sharette v. Credit Suisse Int'l*,
    127 F. Supp. 3d 60 (S.D.N.Y. 2015) .................................................................................... 23

*Slayton v. Am. Exp. Co.*,
    604 F.3d 758 (2d Cir. 2010) ................................................................................................ 18

*St. Clair Cty. Employees' Ret. Sys. v. Acadia Healthcare Co., Inc.*,
    No. 3:18-CV-00988, 2021 WL 195370 (M.D. Tenn. Jan. 20, 2021) ...................................... 5

*Teamsters Loc. 237 Welfare Fund v. ServiceMaster Glob. Holdings, Inc.*,
    No. 220CV02553STATMP, 2022 WL 989240 (W.D. Tenn. Mar. 31, 2022) ....................... 4, 5

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007) .................................................................................. 11, 14, 18, 23

*Tolbert v. Queens Coll*.,
    242 F.3d 58 (2d Cir. 2001) .................................................................................... 6

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
    672 F. Supp. 2d 596 (S.D.N.Y. 2009) ............................................................ 10, 14, 23

*Wilson v. LSB Indus., Inc*.,
    No. 15CIV7614RAGWG, 2018 WL 3913115 (S.D.N.Y. Aug. 13, 2018) ............................... 24

STATUTES

15 U.S.C. §78u-4(b)(1)(B) ............................................................................................ 9

15 U.S.C. §78u-4(b)(2) ............................................................................................... 18

15 U.S.C.A. § 78u–4(b)(1) ........................................................................................... 9

REGULATIONS

17 C.F.R. § 229.303(a)(3)(ii) ......................................................................................... 16

17 C.F.R. § 240.10b–5 .................................................................................................. 6

Lead Plaintiff Enrique Africa ("Africa" or "Plaintiff") hereby opposes Defendants'[1] Motion to Dismiss The Second Amended Complaint ("the SAC") (ECF No. 64).[2]

**INTRODUCTION**

Defendants engaged in a scheme to artificially boost Jianpu's stock price. Thus, the fraud here involved both conduct *and* false statements. So Africa alleged two independent theories of liability under § 10b of the Securities Exchange Act of 1934 ("Exchange Act") and Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder. Those theories of liability are that Defendants: (1) engaged in an unlawful scheme under Rules 10b-5(a) and (c); and (2) made false statements under Rule 10b-5(b). The two theories are independently actionable. *See Lorenzo v. SEC*, 139 S. Ct. 1094, 1102, 1104 (2019). But, "an actionable scheme liability claim also requires something beyond misstatements and omissions, such as dissemination," *SEC v. Rio Tinto plc*, 41 F.4th 47, 49 (2d Cir. 2022). Africa alleged such dissemination here. ¶53.

Defendants acknowledged Africa's false statement allegations under Rule 10b-5(b) and moved to dismiss on that basis. Defendants did not, however, challenge Africa's conduct-based claim under Rules 10b-5(a),(c). Thus, Defendants waived their right to dismiss on such grounds, and the 10b-5(a),(c) claim is not before the Court on Defendants' Motion. No matter how the Court rules on Africa's 10b-5(b) claim, Defendants must answer Africa's 10b-5(a),(c) scheme claim.

On Africa's 10b-5(b) claim, the SAC cures any perceived pleading defects previously identified by the Court in four ways. First, the Court previously held that a restatement could establish falsity as to the Credit Card and Advertising Segments (Order at 20-21), but Africa's scienter

---

[1] Defendants Jianpu Technology Inc. ("Jianpu" or the "Company"), Chief Executive Officer ("CEO") David Ye ("Ye"), and Chief Financial Officer ("CFO") Yilü (Oscar) Chen ("Chen") are collectively "Defendants."

[2] Citations to Defendants' Memo of law in support of their Motion to Dismiss the SAC (ECF No. 68) are cited as "Mot._" and referred to as "the Motion." All "¶_" citations refer to the SAC. Pursuant to the Court's Individual Rules, attached as Exhibit A is a redline showing all differences between the previous complaint and the amended complaint.

allegations were purportedly lacking as to both. Since the Order, Africa has bolstered a strong inference of scienter by alleging that Defendant Ye's wife benefited from the undisclosed related party transactions here, thus establishing a concrete benefit to Ye. *Cf.* Order at 24. Second, Africa bolstered an inference of scienter by alleging additional "little r" restatements that followed Jianpu's first restatement, which show deliberate recklessness. Third, the SAC clarifies a point which Africa contends was misconstrued by the Court in the Order regarding the timing and significance of the undisclosed transactions and how they helped Jianpu meet its revenue guidance. Fourth, two more Jianpu executives have since resigned—one left to join a related party. Viewed holistically, the inference of scienter here is at least as compelling as any nonfraudulent inference.

Defendants' Motion rests largely on premature factual arguments, which cannot be credited in their favor at the pleading stage. *See* §IV.A.3, *infra*. The Court should deny Defendants' Motion.

## I.      FACTUAL BACKGROUND

The Court's general familiarity with the facts as alleged in Africa's Amended Complaint ("AC") (ECF 46) is presumed. *See* Opinion and Order on Motion to Dismiss Africa's AC (ECF 61) ("Order") at 1-9. Since the Order, Africa added allegations to address issues raised by the Order regarding Jianpu's Advertising[3] and Credit Card Segments.[4]

### A.      Defendants' Scheme to Inflate Revenue in Jianpu's Credit Card Segment Stemmed From An Entity Partially Owned by Ye's Wife

The SAC alleged facts which support an inference that the related party which assisted Jianpu in generating its sham revenue was RDD, which is 40% owned by CEO Ye's wife. ¶¶64-78. For instance, Jianpu's restated revenue and expenses pertained to advertising and marketing expenses,

---

[3] The Advertising Segment includes revenue recognized from Jianpu's variable interest entity ("VIE") stake in Databook Tech. Ltd. ("Databook") and entities affiliated with and/or owned by Databook including Databook subsidiaries Hangzhou Scorpion Technology Co., Ltd., Hangzhou Magnet Technology Co., Ltd., and Databook (HK) Limited (collectively "Databook"). ¶28.

[4] Given the Order, the SAC omitted its prior allegations related to the Loan Segment. *See* Order 11-14. Thus, at issue now are false statements and conduct related to just the Credit Card and the Advertising Segments.

which is handled by RDD. ¶¶67-69, 71. The other two related parties which Jianpu disclosed, "Related Party B" and "Related Party C" can be ruled out as the entity which benefited from the related party transactions here given where those businesses are recorded on Jianpu's financials. ¶¶74-78. Thus, only Related Party A remains, and Related Party A is RDD. ¶78.

Following such related party transactions, Jianpu met its revenue forecasts following strong contributions from the Credit Card and Advertising Segments. ¶¶83-88. But without the **_illegitimate, or sham revenue_** generated from the related party transactions, Jianpu would not have hit its targets. ¶¶85-88. These sham transactions increased in frequency and amount following an implosion in the Company's Loan Segment. ¶¶84-87. Once the truth was revealed, and investors learned that 163.8 million RMB of the growth from the Credit Card Segment was not from increased card volume and fees as represented (*e.g.*, ¶¶162, 69), but from undisclosed sham transactions with related parties, Jianpu stock fell significantly. ¶¶54-56, 59-63, 84-88.

### B.      The Company's Restatements and "little r" restatements

In a later admission, Jianpu disclosed that after restating its 2018 and 2019 financials, there were *still* errors in those same financials. ¶¶129-130. To be clear, the "little r" reclassifications it disclosed further changed *already re-stated financials*. ¶¶120-21, 129-130. In other words, even after restating, Jianpu's 2018 and 2019 financials were still wrong, and by material amounts. ¶130.

## II.      APPLICABLE LEGAL STANDARDS DISFAVOR DISMISSAL

The Court must "accept all factual allegations as true and draw all reasonable inferences in favor of the plaintiff." *Metz v. U.S. Life Ins. Co. in the City of New York*, 662 F.3d 600, 602 (2d Cir. 2011). A complaint need only "contain sufficient factual matter ... to state a claim that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[5] The plausibility requirement is met "when the

---

[5] Unless otherwise indicated, all emphasis is added and all internal citations and quotations are omitted.

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (complaint need only contain "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" supporting claims).

### III. AFRICA STATES A CLAIM UNDER RULE 10B-5(a),(c)

#### A. Africa's Scheme Claim Is Not Before The Court On Defendants' Motion

Africa alleged two claims: one under Rule 10b-5(a),(c) (¶¶202-214) for fraudulent conduct; and one under Rule 10b-5(b) (¶¶215-225) for false statements. Defendants acknowledged the false statement allegations under Rule 10b-5(b) and moved to dismiss on that basis (Mot. at 11-17). Defendants did not, however, challenge Africa's claim under Rules 10b-5(a),(c). Thus, the sufficiency of Africa's allegations on his 10b-5(a),(c) claim is not at issue, nor before the Court. Its dismissal would be error. *See In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 709 (9th Cir. 2021), *cert. denied sub nom. Alphabet Inc. v. Rhode Island*, 142 S. Ct. 1227 (2022) ("Because the district court erred in sua sponte dismissing [plaintiffs'] claims under Rule 10b-5(a) and (c) when Alphabet had not targeted those claims in its motion to dismiss, we reverse dismissal of the claims under Section 10(b) and Rule 10b-5(a) and (c)"). Africa need not even oppose an unchallenged scheme claim. *Alphabet*, at 709 (plaintiffs not required to oppose a scheme claim at district court which defendants never moved to dismiss). Under these circumstances, Africa's scheme claim survives, no matter how the Court rules on his 10b-5(b) claim. *See Teamsters Loc. 237 Welfare Fund v. ServiceMaster Glob. Holdings, Inc.*, No. 220CV02553STATMP, 2022 WL 989240, at \*14 (W.D. Tenn. Mar. 31, 2022) (dismissing 10b-5(b) claim in its entirety but ordering defendants to answer plaintiffs' unchallenged 10b-5(a),(c) scheme liability claim).

In *ServiceMaster*, the plaintiffs used less than one page of their 25-page opposition brief to argue that defendants failed to move to dismiss an alleged scheme claim. The rest of plaintiffs'

opposition argued the 10b-5(b) claim had been adequately alleged. Still, despite the disproportionate briefing on 10b-5(b) claims, the court in *ServiceMaster* dismissed the 10b-5(b) false statement claim—in its entirety—but ordered ServiceMaster to answer the plaintiffs' scheme claim under 10b-5(a) and (c). *See id*. at \*14 (taking "no position" on the merits of plaintiffs' 10b-5(a),(c) claim because it was not before the court and ordering Defendants to answer it).

     *ServiceMaster* is no outlier. *See e.g.*, *St. Clair Cty. Employees' Ret. Sys. v. Acadia Healthcare Co., Inc.*, No. 3:18-CV-00988, 2021 WL 195370, at \*2 (M.D. Tenn. Jan. 20, 2021) ("Defendants did not raise or articulate any arguments specific to the scheme liability allegations in their opening brief, and ***the Court declines to consider*** the arguments raised for the first time in their Reply in ruling on the pending motion to dismiss."); *Ind. Pub. Ret. Sys. v. AAC holdings, Inc*., 2021 WL 1316705, at \*4 (M.D. Tenn. Apr. 8, 2021) ("In their Reply, Defendants argued that Plaintiffs had failed adequately to plead reliance upon any purported scheme. The Court finds that Defendants did not move to dismiss Plaintiffs' scheme liability claims and, therefore, it will not address Defendants' belated argument related thereto, ***which are deemed waived*** for purposes of the Motion"); *In re Aqua Metals, Inc. Sec. Litig*., No. 17-CV-07142-HSG, 2019 WL 3817849, at \*8 (N.D. Cal. Aug. 14, 2019) (denying motion to dismiss for 10b-5(a),(c) claim, noting "Defendants did not challenge the scheme liability claim in their opening brief, and *for this reason alone* the Court could deny their motion to dismiss this claim"); *Georgia Firefighters' Pension Fund v. Anadarko Petroleum Corp*., 514 F. Supp. 3d 942, 951 (S.D. Tex. 2021) (similar). This Court has consistently found arguments waived when not made in an opening brief. *See e.g.*, *In re: Gen. Motors LLC Ignition Switch Litig.*, 2015 WL 7769524, at \*1 (S.D.N.Y. Nov. 30, 2015) ("arguments not raised in opening brief are 'waived and need not be considered'"); *In re Motors Liquidation Co.*, No. 20-CV-3093 (JMF), 2021 WL 1085362, at \*5, n.6 (S.D.N.Y. Mar. 22, 2021) ("it is well established that 'arguments not made in an [ ] opening brief are

waived'") (citing cases).

Waiver is particularly appropriate here because it has now been *two rounds* of briefing where Defendants did not challenge Africa's scheme claim and, in between, the Court alerted Defendants that they failed to spot the issue before. *See* Order at 29-30. Still, Defendants did not move to dismiss Africa's scheme claim. The SAC created a new, separate, count which differed from the AC to spotlight the scheme claim.[6] Africa's scheme claim appeared before his false statement claim—he was not trying to hide the ball.[7] Defendants noticed the scheme allegations because they referred to them in passing (Mot. 17, n.5), but still declined to seek dismissal.[8] Thus, Defendants evinced the requisite "intentional relinquishment or abandonment of a known right" that warrants waiver here. *Morgan v. Sundance, Inc*., 142 S. Ct. 1708, 1713 (2022).

And, according to the Supreme Court, any prejudice to Defendants from a waiver finding is irrelevant. *Id*. ("a federal court assessing waiver does not generally ask about prejudice.").

Africa's request for a waiver finding is not a game of "gotcha." It is needed because Defendants discussed allegations that Africa pleaded for his scheme claim within their analysis of Africa's false statement claim. *See e.g*., Mot. at 17, n.5. By ignoring one claim, it makes Africa's ability to oppose its dismissal near impossible. Africa need not argue Defendants' Motion for them, nor try to guess what arguments they might improperly make on reply. *Ernst Haas Studio, Inc. v. Palm Press, Inc*., 164 F.3d 110, 112 (2d Cir. 1999) ("new arguments may not be made in a reply brief"). There is no

---

[6] *Compare* SAC §§ XII "First Claim" (10b-5(a),(c) claim) (¶¶202-214) and XIII "Second Claim" (10b-5(b) claim) (¶¶215-225) *with* AC (ECF No. 46) §§ XII (10b-5 claim) (¶¶185-195) and XIII (control person liability claim) (¶¶196-199).
[7] Though even if both claims appeared in the same count–arguably making them harder to detect–waiver would still be appropriate. *Cf*. *JAC Holding Enterprises, Inc. v. Atrium Cap. Partners, LLC*, 997 F. Supp. 2d 710, 735 (E.D. Mich. 2014) ("Although the complaint does not cite the subsections of 17 C.F.R. § 240.10b–5, it does allege . . . the planning and carrying out of a comprehensive scheme . . .The complaint thus alleges both (1) false statements in violation of Rule 10b–5(b) and (2) a deceptive 'scheme' or 'course of business' violations of 10b–5(a) and (c)").
[8] In the Second Circuit it is well settled that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argument, are deemed waived." *Tolbert v. Queens Coll.*, 242 F.3d 58, 72 (2d Cir. 2001); *see also In re Lehman Bros. Inc.,* No. 11-cv-6052, 2015 WL 1822646, at *8 (S.D.N.Y. Apr. 22, 2015) (finding waiver when issue is not developed beyond a single sentence in an opening brief).

reason to disregard the Second Circuit's well-settled waiver doctrine, particularly given *Morgan*. In sum, the Court should not reach the merits of Africa's scheme claim. Instead, the Court should order Defendants to answer; and begin discovery.

### B.    Africa States a Scheme Claim Under 10b-5(a),(c) With At Least Three Theories

While a merits analysis is neither necessary nor appropriate, Africa adequately alleged a scheme under at least three different and independent theories in any event.

#### 1.    Disseminating A False Statement Is Sufficient Conduct To Allege A Scheme Claim

As the Supreme Court unambiguously held, disseminating a false statement—by emailing it to investors—"easily" alleges sufficient conduct to state a scheme claim. *Lorenzo v. SEC*, 139 S.Ct. at 1101. Africa alleged such conduct here. ¶¶16, 53, 209, 211, 220. As the Court recognized, generally "misreported financial data are . . . false statements of fact." Order at 20, citing *In re DRDGOLD Ltd. Sec. Litig.*, 472 F. Supp. 2d 562, 569 (S.D.N.Y. 2007). Jianpu restated its financial results for fiscal years 2018 and 2019 (¶¶59-60), and various financials for fiscal years 2018 through 2021 were "retrospectively reclassified" through "little r" restatements. ¶¶129-130. All these false statements, including Jianpu's restated financials, were *emailed directly to investors*, just as in *Lorenzo*. ¶53. Thus, Africa adequately alleged conduct which supports a scheme claim. Africa further added that Defendants were aware of such dissemination. ¶¶209, 211, 220.[9] There "is nothing borderline about this case." *Lorenzo*, 139 S.Ct. at 1101. Defendants make no argument in response, apparently conceding the point.

#### 2.    Africa's Allegations Of Related Party Transactions Also State A Scheme Claim

Africa alleged related party transactions used to benefit the family of Jianpu's CEO (¶¶3-4, 12,

---

[9] It makes no difference if the Individual Defendants did not make the statements: "one can be held liable in connection with such a scheme even if he did not himself make a material misstatement in connection with it." *IBEW Loc. 90 Pension Fund v. Deutsche Bank AG*, No. 11 CIV. 4209 KBF, 2013 WL 1223844, at *11 (S.D.N.Y. Mar. 27, 2013).

7

64-78), which is also actionable under 10b-5(a),(c). *SEC v. China Ne. Petroleum Holdings Ltd*., 27 F. Supp. 3d 379, 392 (S.D.N.Y. 2014) (where the SEC "competently pled the existence of a larger scheme, one that went beyond mere misrepresentations to investors, whereby defendants enriched themselves and their families at shareholders' expense."); *Gruber v. Gilbertson*, No. 16CV9727, 2018 WL 1418188, at *14 (S.D.N.Y. Mar. 20, 2018) (participants "caused the Company to award their family members a substantial amount of shares, which were then transferred to them—a telltale sign of deceptive conduct.").

### 3.    An Earnings Management Scheme Is Actionable Under 10b-5(a),(c)

Defendants' use of sham transactions to boost revenue is also actionable conduct under 10b-5(a),(c). *See In re Parmalat Securities Litigation*, where the court found that defendants were liable for engaging in deceptive transactions–generating revenue from worthless invoices–which, in turn, allowed Parmalat to publish misleading financial statements. 376 F. Supp. 2d 472, 504 (S.D.N.Y. 2005). There, the court noted: "[t]he transactions in which the defendants engaged were by nature deceptive. They depended on a fiction, namely that the invoices had value." *Id.* "[T]he purpose of [t]his conduct was to artificially inflate PSI's revenue." *Id*. at 505.

So too here, a material portion of Jianpu's revenue was fictional—generated by deceptive sham transactions. ¶¶84-88. And, Defendants' factual arguments about any purported contradiction within the SAC as to the related party transactions (Mot. 14-15), do not apply to Africa's scheme claim for at least two reasons. First, the scheme claim is not before the Court for the reasons discussed above. Second, even if it were, Africa's scheme claim is not subject to the same heightened pleading standards as his 10b-5(b) claim. *In re Barclays Liquidity Cross & High Frequency Trading Litig.*, 390 F. Supp. 3d 432, 450 (S.D.N.Y. 2019) ("[10b-5(a),(c)] claim fits comfortably in the class of claims that 'involve facts solely within the defendant's knowledge,' and thus qualifies for the relaxed particularity

requirement contemplated by *ATSI Communications*. Under that standard, 'a [10b-5(a),(c) claim] must plead with particularity the nature, purpose, and effect of the fraudulent conduct and the roles of the defendants.").[10]

Here, the SAC details the nature—related party transactions (¶¶62-68); purpose—to boost Jianpu's revenue, meet revenue guidance, and enrich Ye's family (¶¶84-89); and effect—artificially inflating Jianpu's stock (¶¶204-208) of the conduct.

## IV.      AFRICA SAC STATES A CLAIM UNDER 10b-5(b)

To state a claim under § 10(b) of the Exchange Act and SEC Rule 10b-5, a plaintiff must allege: (1) a material misrepresentation or omission ("falsity"); (2) scienter; (3) a connection with the purchase or sale of a security; (4) reliance on the misrepresentation or omission; (5) economic loss; and (6) loss causation. *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37-39 (2011). Under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), a plaintiff adequately pleads falsity by "specify[ing] each statement alleged to have been misleading" and "the reason or reasons why the statement is misleading." 15 U.S.C. §78u-4(b)(1)(B).

### A.      Defendants Made False Statements About The Company's Credit Card Segment

#### 1.      The Company's Restatement Constitutes an Admission that its Financial Results Were Materially False When They Were Issued

In the Order, the Court rightly observed that courts within this District have generally held that "misreported financial data are . . . false statements of fact." Order at 20, citing *DRDGOLD*, 472 F. Supp. 2d at 569. Indeed, "the mere fact that financial results were restated is sufficient basis for

---

[10] *See also*, *IBEW Loc. 90 Pension Fund v. Deutsche Bank AG*, 2013 WL 1223844, at *11 ("claims that liability is premised on a fraudulent or deceptive scheme do not require compliance with the PSLRA's pleading requirements."); *In re Eletrobras Sec. Litig.*, 245 F. Supp. 3d 450, 457, n.2 (S.D.N.Y. 2017) ("Because scheme liability 'does not require an allegation that the defendant[s] made a statement,' claims brought under Rule 10b–5(a) and (c) 'need not comport with Subsection (b)(1) of the PSLRA, which requires that ... plaintiff[s] set forth each statement alleged to have been misleading, and facts giving rise to this belief.'"); *In re Glob. Crossing, Ltd. Sec. Litig.*, 322 F. Supp. 2d 319, 329, n.7 (S.D.N.Y. 2004) ("The requirement of 15 U.S.C.A. § 78u–4(b)(1) obviously does not apply to claims brought under Rule 10b–5(a) or (c), as such claims do not rely on allegations of material misstatements or omissions.").

pleading that those statements were false when made." *Fresno Cty. Employees' Ret. Ass'n v. comScore, Inc.*, 268 F. Supp. 3d 526, 544 (S.D.N.Y. 2017); *see also Caiafa v. Sea Containers Ltd.*, 525 F. Supp. 2d 398, 410 (S.D.N.Y. 2007) (same).[11]

Under GAAP, restatements are proper "only to correct material errors [in financial statements] that existed at the time the statements were originally issued." *comScore, Inc.*, 268 F. Supp. 3d at 544. On February 16, 2021, Jianpu announced that it would restate its FY 2018 and 2019 results. ¶¶59-60, 83-86, 129-130. Thus, consistent with ample Second Circuit law, Jianpu's restatement established the falsity of its 2018 and 2019 financials. ¶¶134-137, 139, 142, 145, 147, 149, 152, 156, 161, 167-68, 173-76. For similar reasons, the later "little r" restatements established the falsity of even the restated financials. ¶130.

### 2. Jianpu's Related Party Transaction Disclosures Were Misleading

Jianpu's failure to disclose related party transactions (¶¶52, 139–44, 151–52, 156–58, 161–63, 167–69) is an independent basis to demonstrate falsity. *See SEC v. China Ne. Petroleum*, 27 F. Supp. 3d at 391 (failure to disclose $59 million of related party transactions sufficient for falsity); *Brown v. China Integrated Energy, Inc.*, 875 F. Supp. 2d 1096, 1118 (C.D. Cal. 2012) (similar.). "[T]he absence of the related-party information from [Defendants'] SEC filings *necessitates* the conclusion that those filings are misleading as a matter of law." *China Ne. Petroleum*, 27 F. Supp. 3d 379 at 391. *See also*, *In re Montage Tech. Grp. Ltd. Sec. Litig.*, 78 F. Supp. 3d 1215, 1224 (N.D. Cal. 2015) (failure to disclose the related party nature of transactions "establishes the falsity of [defendant's] financial disclosures"); *SEC v. Das*, 2010 WL 4615336, at *3, *8 (D. Neb. Nov. 4, 2010) (failure to disclose

---

[11] "Although a restatement is not an admission of wrongdoing, the mere fact that financial results were restated is sufficient basis for pleading that those statements were false when made." *In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*, 324 F. Supp. 2d 474, 486 (S.D.N.Y. 2004); *cf. Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 672 F. Supp. 2d 596, 606 (S.D.N.Y. 2009) ("Misreported financial information clearly amounts to a false statement of fact.").

$5.4 million of related party transactions sufficient to plead materiality because investors consider "management ethics and accountability").

In the Order, the Court found Africa's authority distinguishable because his cases involved transactions with company executives. Order at 17. Yet the Court also noted "key facts," like allegations about Jianpu executives personally benefiting, were missing. *Id*. The SAC addresses the Court's prior concerns by alleging Ye's wife's interest in the transactions here. ¶¶64-78.

### 3.    Defendants' Factual Arguments Are Improper, Flawed, And Premature

On a motion to dismiss, a court cannot credit Defendants' version of the facts. *Tellabs, Inc. v. Makor Issues & Rts., Ltd*., 551 U.S. 308, 322 (2007). And this is no mere technical rule. *See id*. (On a motion to dismiss, "courts must . . . accept all factual allegations in the complaint as true."). "Although pleading standards are heightened for securities fraud claims, we must be careful not to mistake heightened pleading standards for impossible ones." *Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co., 1*9 F.4th 145, 150 (2d Cir. 2021). The rule is particularly important in securities fraud cases where Defendants may try to cherry-pick certain facts from public filings to "improperly [ ] defeat what would otherwise constitute adequately stated claims at the pleading stage." *Khoja v. Orexigen Therapeutics, Inc*., 899 F.3d 988, 998 (9th Cir. 2018).

Defendants make the factual argument that there is a purported inconsistency in the SAC as to the related party transactions. Mot. at 12-15. Yet there are myriad inconsistencies in Defendants' arguments. For instance, Defendants insinuate that related party transactions had nothing to do with the restatement. Mot. at 12-13. But Defendants' exhibits refute their point. Defs.' Ex. E at 122 (Admitting that Jianpu had "***inaccurate disclosures of certain related party transactions*** in 2018"); *Id*. at F-15 ("In connection with the assessment of the financial impact of the Review, management found that previously disclosed amounts ***for related party transactions were understated*** . . ."). And if Defendants' reading were correct—that the related-party relationships behind the "questionable

11

transactions" were *not* with Jianpu (but were by-and-between true third-parties)—then there would be no need to restate Jianpu's revenue because such transactions would have been arm's length and bona fide.[12]

Defendants also argue that the differing directions of the 2018 and 2019 financials for Related Party A "sales and marketing expenses" somehow undermines Africa's theory (Mot. at 14), yet Defendants ignore that the very financials they cite were *later reclassified yet again* via the "little r" restatements. Compare Defendants Ex. E at F-43 ("sales and marketing expense charged by Related Party A") (cited at Mot. 14) with ¶129 ("sales and marketing expense for prior periods of 2021 . . . have been ***retrospectively reclassified***") ¶130 ("sales and marketing expenses for prior years have ***also been retrospectively reclassified***"). Simply put, Defendants ignore that the "little r" restatements *further changed* Jianpu's (already restated) financials—including the very sales and marketing expenses Defendants cite. ¶130.[13] And Defendants' argument that neither Related Party A nor RDD were impacted by the restatement fails: the little r restatement specifically cited costs from "related party" in 2018 and 2019 as being reclassified. ¶130; *cf.* ¶69.

There are similar factual issues about the offsetting nature of the restated expenses which Defendants cite (Mot. 14-15). But in a motion to dismiss, Plaintiff need not make such arguments. *City of Austin Police Ret. Sys. v. Kinross Gold Corp.*, 957 F. Supp. 2d 277, 288 (S.D.N.Y. 2013) ("the [ ] connection that defendants posit is plausibly subject to dispute. It is, therefore, not appropriate for

---

[12] Defendants are essentially suggesting that Jianpu restated its financials for related-party transactions that purportedly took places among *unrelated customers* – which is absurd. That revenue and offsetting expenses were restated in identical amounts (¶60) supports the inference that the related party transactions were *with Jianpu:* a roundtrip transaction *between related parties* creates a precise matching of revenue and expenses as here.

[13] Defendants argue the pre-and-post restatement figures of Jianpu's VIE's remained the same. Mot. at 14. But Defendants ignore that such VIE's are consolidated into the Company's financials – which might explain why there was no change in the reported VIE's financials—due to such consolidation, the effect could have hit elsewhere. See Defs.' EX. E at 31, Nor do Defendants answer whether the supposedly "unchanged" financials they cite were impacted by the later "little r" restatement which *further changed* Jianpu's 2018 and 2019 financials. ¶130.

judicial notice under Rule 201(b).") *SEC v. Das*, 2010 WL 4615336, at \*8 ("dismissal on these grounds is improper.").

Another factual issue Defendants gloss over is RDD's ownership structure, which they cite in one year, but contrast with Related Party A in another,[14] yet over the course of that period:

> The shareholding structure of RDD was updated in 2019 and concurrent with the completion of equity transfer in RDD, the previous contractual arrangements Beijing Rongqiniu Information Technology Co., Ltd. entered into with RDD and *its then previous shareholders* that provided Beijing Rongqiniu Information Technology Co., Ltd. effective control over RDD were terminated and a new set of contractual arrangements with the same terms were entered into with RDD and *its then current shareholders*.

Exhibit 4.7 to Jianpu's 2021 20-F. In other words, Defendants compare apples-to-oranges while omitting the ownership change which occurred in between. *See also*, Defs.' Ex. E at 52 ("From 2018 to 2020, we set up and acquired several subsidiaries and variable interest entities to support our business growth in China and overseas."); and at 72 (similar).

Africa could make similar factual arguments about Defendants' assertion that RDD is not Related Party A, but he need not preview his trial strategy now. *See In re Scholastic Corp. Sec. Litig.*, 252 F.3d63, 72 (2d Cir. 2001) ("Even with the heightened pleading standard under Rule 9(b) and the Securities Reform Act, we do not require the pleading of detailed evidentiary matter in securities litigation.")   At bottom, the ownership structure and shell game Defendants devised was complex. In a post Class Period filing made October 18, 2022, Jianpu disclosed comments it received from the SEC's Division of Corporate Finance. In those comments, the SEC demanded that Jianpu:

> refrain from implying that the contractual agreements are equivalent to equity ownership in the business of the VIE . . . your disclosure should emphasize that you are the primary beneficiary of the VIE for accounting purposes, which is not akin to a parent-subsidiary relationship. Accordingly, please remove any analogy to a parent-subsidiary relationship between your Company and the VIEs.

\*\*\*

---

[14] *See* Mot. at 13 (citing Exhibit E, Jianpu's 2019 20-F) and Mot. at 14 (citing Exhibit D, Jianpu's 2018 20-F).

> We note you have a column labeled as "Percentage of direct or indirect economic interest." Please revise ***to make it clear to investors which entities you consolidate through direct equity ownership versus variable interest***. It should also be clear that you do not own economic interest in your variable interest entities.

In sum, Defendants can test Africa's allegations about RDD and Related Party A on a more developed record, but many arguments they make now are premature. Africa is entitled to the inference that Related Party A is the entity he alleged for the reasons he alleged. ¶¶64-78. *Tellabs,* 551 U.S. at 309; *SEC v. Das*, 2010 WL 4615336, at *8 ("While discovery may reveal otherwise, the Complaint sufficiently alleged that the transactions fit within the broad definitions in Item 404. Therefore, dismissal on these grounds is improper."). Africa's broader theory stands either way: the restatement and later "little r" restatements establish Jianpu's financials regarding undisclosed related party transactions were false and/or misleading when made. ¶¶83-84, 129-130.

## B.     Defendants Made False Statements About The Company's Databook Segment

Jianpu's restatement of its Advertising Segment revenue likewise establishes falsity for the Databook statements. ¶¶59, 83, 118-119; *Varghese*, 672 F. Supp. 2d at 606. In the Order, the Court found the Advertising Segment allegations may constitute material misstatements, Order at 20, but the FAC supposedly "fail[ed] to establish that the Company had a duty to disclose any uncharged wrongdoing in 2019. *Id*. at 21. GAAP imposed such a duty. A criminal investigation into the Databook Segment began in September 2019. ¶99. And when the Company announced results for the period ending September 30, 2019 (a few months later), Defendants purged the value of its *entire* Databook subsidiary[15] from its balance sheet. ¶¶100-103. Under GAAP, when facing potential litigation liability, a company has *a duty* to follow one of two paths: (a) accrue reserves for the expected liability; or (b) "provide appropriate disclosure" to investors about why the company is not, or cannot, accrue reserves.

---

[15] Which establishes that, in the Company's view, the loss was more than just possible or probable. ¶¶114-117. Something caused the impairment, and GAAP requires more information about what specifically it was. ¶114.

¶¶114-16 (quoting ASC 450).

Here, Defendants did neither. ¶¶167-172. By contrast, in *In re XP Inc. Sec. Litig.*, relied on by Defendants (Mot. 18-19), XP elected option (a), and *did provide an estimate of the liability*. 524 F. Supp. 3d 23, 34-36 (E.D.N.Y. 2021).[16] Jianpu provided no estimate under option a (¶¶113-116), thus leaving option b as its only choice to meet its duty under GAAP. Under option b, Defendants had to disclose *why* Jianpu did not accrue reserves: *i.e.*, *why* it could not provide an estimate as in *XP*. Defendants here could have said, "estimating fines in a criminal case in China is difficult to predict," or "the investigation is too new to estimate liability." In other words, it is not that the investigation *per se*, triggered the disclosure duty—GAAP imposed it ***because Jianpu accrued no reserves*** under option a, thus requiring the disclosure under option b. ¶¶114-16.

Instead, the Company—after writing off the whole business—cited purported "adverse development of its business and change of the relevant industry background and market conditions" (¶¶100-101). But it was not *the industry* or *the market* that prompted the impairment. It is not as if customers stopped transacting with Databook. Rather, it was a criminal investigation—something specific *to the Company*, not a general industry trend that caused the impairment. The explanation given and the true cause are fundamentally different and "investors consider management ethics and accountability." *Das*, 2010 WL 4615336, at *8. Investors are entitled to know the true cause. *Cf. McKenna v. SMART Techs. Inc.*, 2012 WL 1131935, at *13 (S.D.N.Y. Apr. 3, 2012) (where defendant's statement "put [a] question … 'in play,'" he is "required to make full disclosures to ensure the accuracy of [his statements]").[17] Or if it really was "*industry or market conditions*", that caused

---

[16] Plaintiffs there quarreled with the Company over the *amount of the estimate*, which the court found was immaterial relative to the size of the company. By contrast here, the Databook investigation was so significant it caused Jianpu to write the entire business to zero. ¶¶101-103, n.10.

[17] *See also*, *Menaldi v. Och-Ziff*, 164 F. Supp. 3d 568, 581 (S.D.N.Y. 2016)("a corporation may be compelled to disclose uncharged wrongdoing if its statements are or become materially misleading in the absence of disclosure.").

15

the impairment, Item 303 triggered a disclosure.

### C.    Plaintiff Alleged Falsity Under Item 303

Africa adequately alleged that Defendants violated the Exchange Act based upon Item 303 of SEC Regulation S–K, 17 C.F.R. § 229.303(a)(3)(ii). As this Court has recognized, "Item 303 requires corporate entities to *[d]escribe* any known trends or uncertainties . . . that the registrant reasonably expects will have a material . . . unfavorable impact on . . . revenues or income from continuing operations." *In re Nielsen Holdings PLC Sec. Litig.*, 510 F. Supp. 3d 217, 226–27 (S.D.N.Y. 2021); *see also*, *Litwin v. Blackstone Grp., L.P.*, 634 F.3d 706, 716 (2d Cir. 2011) (same); ¶¶93-95. "The SEC's interpretive release regarding Item 303 clarifies that the Regulation imposes a disclosure duty where a trend, demand, commitment, event or uncertainty is both [1] presently known to management and [2] reasonably likely to have material effects on the registrant's financial condition or results of operations." *Litwin*, 634 F.3d at 716; *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 120-22 (2d Cir. 2012); ¶¶96-98. As this Court has held, a "failure to make a required Item 303 disclosure . . . is indeed an omission that can serve as the basis for a Section 10(b) securities fraud claim" if the omission is material and the other requirements under Section 10(b) are fulfilled. *Nielsen*, 510 F. Supp. 3d at 227; *see also Moab Partners, L.P. v. Macquarie Infrastructure Corp.*, No. 21-2524, 2022 WL 17815767, at *2-3 (2d Cir. Dec. 20, 2022) (same).

Such is the case here. On the Company's May 28, 2019, earnings call, Chen observed that even though the Loan Segment would see "some downward trend," he still assured investors that "we are seeing continued growth of our credit card business and also the – our *marketing and advertising services and other services* [*i.e.*, Databook]." ¶¶45-47. So when the impairment was disclosed in December 2019, and Databook recorded *zero revenue* for the quarter (¶118), Defendants were fully aware of the "event or uncertainty" that was "reasonably likely to" impact revenue. Yet Defendants

16

did not ***describe*** the event or uncertainty. ¶103. Nor did they say anything the following quarter roughly three months later. ¶105.

These material issues were "known to Defendants and reasonably likely to have material effects on [the Company's] financial condition or results of operation," — as established by the impairment—if the purported trend was unlikely to have any impact, there would be no need to impair the *entire business*. Yet Defendants failed to ***describe*** the trend as required by Item 303. ¶¶98, 101, 116-117, *Moab*, 2022 WL 17815767, at \*3. "It goes without saying that such known uncertainties could materially impact revenues." *Panther*, 681 F.3d at 121–22.

Defendants' arguments to the contrary fail. First, Defendants contend that Plaintiff's allegations are insufficient "because Jianpu recorded an impairment" thereby "disclosing both a known uncertainty and its potential 'material impact' on the business." Mot. at 20.  But Item 303 required Defendants to ***describe*** the trend or uncertainty. *Litwin*, 634 F.3d at 716. Second, Defendants contend that "[t]o the extent Plaintiff faults Jianpu for disclosing a November 2019 consumer data privacy Notice in its 2019 20-F" this Notice was purportedly not material, particularly in light of the Company's disclosures. Mot. at 20-21. Defendants are incorrect. For instance, in the Company's 2019 20-F, which was not issued until April 30, 2021, the Company disclosed the uncertainty of the risk posed by the Company's business practices considering China's Notice on the Measures for Determining the Illegal Collection and Use of Personal Information through Apps, which enumerated inappropriate conduct including collecting and using personal information without the users' consent. ¶92. Here, when the Company gave only a vague explanation for its impairment, Jianpu shares fell 5.2%, thereby showing materiality. ¶¶101-02; *see also SEC v. Am. Growth Funding II, LLC*, No. 16-CV-828 (KMW), 2018 WL 6322145, at \*3 (S.D.N.Y. Dec. 4, 2018) ("A decline in stock price soon after the disclosure of a misrepresentation suggests the misrepresentation *mattered* to investors.")

(italics in original). Additionally, "a district court may not dismiss for lack of materiality unless the alleged misstatements or omissions are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance." *Moab*, 2022 WL 17815767, at *3. Finally, Defendants' disclaimers (Mot. at 20) were ineffective because "[c]autionary words about future risk cannot insulate from liability the failure to disclose that the risk has transpired." *Rombach v. Chang*, 355 F.3d 164, 173 (2d Cir. 2004). Thus, Africa adequately alleged that Defendants violated the Exchange Act based on Item 303.[18]

### D.    Plaintiff Adequately Alleged Scienter

The PSLRA requires plaintiffs to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. §78u-4(b)(2); *Tellabs,* 551 U.S. at 314. "Courts must consider the complaint in its entirety . . . [t]he inquiry is whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Tellabs*, 551 U.S. at 323 (emphasis in original). Moreover, "at the motion to dismiss stage, a tie on scienter goes to the plaintiff." *City of Pontiac Gen. Employees' Ret. Sys. v. Lockheed Martin Corp.*, 875 F. Supp. 2d 359, 372 (S.D.N.Y. 2012). Courts err when they "scrutinize each allegation in isolation" and fail "to assess all of the allegations holistically." *Slayton v. Am. Exp. Co.*, 604 F.3d 758, 775 (2d Cir. 2010).

In the Second Circuit, plaintiffs may establish scienter in two ways: "(a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious behavior or recklessness." *Novak v. Kasaks*, 216 F.3d 300, 307 (2d Cir. 2000). Circumstantial evidence supporting a "strong inference" of scienter

---

[18]    Defendants' reliance upon *Schaffer v. Horizon Pharma PLC*, No. 16-CV-1763 (JMF), 2018 WL 481883 (S.D.N.Y. Jan. 18, 2018), is misplaced. Unlike, in *Schaffer*, Africa adequately alleged known trends and uncertainties that Defendants reasonably expected would have a material unfavorable impact on Jianpu's financial condition. *Nielsen*, 510 F. Supp. 3d at 226–27.

can be shown by alleging facts showing "conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant[s] or was so obvious that the defendant[s] must have been aware of it." *In re Carter-Wallace, Inc. Sec. Litig.*, 220 F.3d 36, 39 (2d Cir. 2000) (citation omitted). This standard is met when allegations show a defendant displayed "an egregious refusal to see the obvious, or to investigate the doubtful," *Pirnik*, 2016 WL 5818590, at *6.

### 1.    Undisclosed Related Party Transactions Create Sufficient Motive

"As a threshold matter, while related-party transactions are not per se unlawful, we view them with 'extreme skepticism,' especially when they go undisclosed." *China Ne. Petroleum*, 27 F. Supp. 3d 379 at 389 (presence of undisclosed related party transactions supported inference of scienter) (citing *McCurdy v. SEC*, 396 F.3d 1258, 1261 (D.C.Cir. 2005)). When a plaintiff pleads "a corporate insider's family member is the recipient of shareholder funds, this constitutes a sufficiently concrete and personal benefit to infer motive." *Id.*[19] In the Order, the Court found Africa failed to plead any concrete and personal benefit. The SAC's allegations that connect the sham transactions with RDD, which is owned by Ye's wife (¶¶67, 72-73, 78), provide a concrete and personal benefit. *China Ne. Petroleum*, 27 F. Supp. 3d 379 at 389. Defendants' interpretation of their RDD disclosures (Mot. at 24) cannot overcome Africa's contrary allegations. § IV.A.3.

### 2.    That The Accounting Violations Were Used to Both Manipulate Revenue and Meet Revenue Guidance Independently Evince Conscious Misbehavior

Where, as here, "accounting manipulations involving premature revenue recognition ... are especially indicative of conscious misbehavior since such violations do not commonly occur

---

[19] *See also*, *SEC v. Stanard*, No. 06 CIV 7736(GEL), 2009 WL 196023, at *28 (S.D.N.Y. Jan. 27, 2009); *In re AOL Time Warner, Inc. Sec. and ERISA Litig.*, 381 F. Supp. 2d 192, 226-27 (S.D.N.Y. 2004) (sham transactions sufficient to plead scienter under PSLRA).

inadvertently, but instead suggest a conscious decision to improperly recognize revenue." *In re Veeco Instruments, Inc. Sec. Litig.*, 235 F.R.D. 220, 232 (S.D.N.Y. 2006); *In re Gilat Satellite Networks, Ltd.*, 2005 WL 2277476, at *20 (E.D.N.Y. Sept. 19, 2005). Such manipulations exist here: in response to plunging revenue in the Loan Segment, Jianpu's restated financials show the Credit Card segment's revenue *through sham transactions* grew with increasing intensity each quarter beginning Q1 2019 (just after a decline in Jianpu's Loan Segment revenue). *See* Figure 2, ¶84. In other words, the further Loan Segment revenue fell, the more the *illegitimate, or sham* revenue grew in the Credit Card Segment, which sought to offset the Loan Segment revenue implosion. *Id.*; ¶¶85-87. While Credit Card Segment may have been growing when the Loan Segment imploded, *sham revenue* had not begun growing. ¶¶85-88, *cf.* Order at 26-27. This increased sham revenue gave Jianpu *just enough* extra revenue to meet or exceed its overall revenue guidance during three quarters of 2019 (¶88), which would not have occurred absent such fictious revenue,[20] further supporting scienter. *See AOL,* 381 F. Supp. 2d 192 at 240 (holding that manipulated revenue used to meet quarterly revenue targets strengthened an inference of scienter).

For the same reasons, scienter is also apparent in the Company's Advertising Segment. Defendants' improper revenue recognized in Databook also enabled Jianpu to meet its revenue guidance in 2019. ¶¶118-119. *SEC v. Winemaster*, 529 F. Supp. 3d 880, 916 (N.D. Ill. 2021) ("Scienter can be supported where, as here, a defendant is alleged to know of a revenue shortfall and thus has a

---

[20] In Q1 2019, the Company still would have met revenue guidance after the restatement, but would not have substantially exceeded it, as it did before the restatement. *See* ¶¶84-88,  (showing previously reported revenue of RMB 654.9 million and restated revenue of RMB 618.3 million, versus initial guidance of RMB 600 – 630 million). For the rest of 2019, the Company met or exceeded its guidance range before the restatement, but missed even the low end of its range after the restatement. The Order noted this point did not support scienter because the Credit Card Segment revenue growth began even earlier. Order at 26-27. But the point is, while the Credit Card Segment grew before the sham transactions began, it did not grow quickly enough *to meet analysts' expectations* without the *additional sham revenue.* That extra fake revenue increased beginning shortly after the Loan Segment's downfall. ¶¶84-87.

motive to increase revenue to meet earnings expectations.") (collecting cases). As in *Winemaster*, the illegitimate revenue here was just enough to meet analysts' estimates:

> It is important . . .that, for each quarter at issue here, [Jianpu's actual] revenues were falling just short of the analysts' net revenue estimate. But ***by improperly recognizing revenue from the subject transactions***, [Jianpu] was able to meet the analysts' revenue estimates or at least keep the shortfall within a respectable range of the estimate. Thus, although the amount of revenue recognized from any particular subject transaction may have been quantitively small, it played an important role for [Jianpu] . . .

*Id*. at 909–10 (discussing materiality).

### 3.    The "little r restatements" Strengthen An Inference Of Scienter

While a restatement on its own is not enough for a strong inference of scienter, the many restatements here strengthen the inference. *See In re Atlas Air Worldwide Holdings*, 324 F. Supp. 2d 474, 489 (S.D.N.Y. 2004) ("The magnitude of the adjustments raises questions about defendants' credibility, makes the press statements increasingly suspect, and by doing such, further supports a strong inference of scienter.") (collecting cases). Jianpu's financials were restated in April 2021. ¶62. That should have fixed the prior periods' falsity, but it did not. Later, the Company also issued a "reversal" of its Databook income (¶119). A year later, the restatement and "reversal" was then followed by an April 29, 2022 "retrospective reclassification" of various lines on Jianpu's income statement from 2017 through 2020. ¶130. Some financials "retrospectively reclassified" were the same as those already restated. *Id*. (reclassifying sales and marketing expenses, and cost of revenue). Such ongoing failure to maintain reporting accuracy evinces deliberate recklessness because the restatement clearly raised a red flag that should have drawn the Individual Defendants' attention to such issues in April 2021. Instead, the Company again reported false figures repeatedly thereafter. ¶¶123-125.

### 4.    Internal Control Deficiencies Contribute to a Strong Inference of Scienter

"Courts in this District have repeatedly held that weak internal controls will support an inference of scienter." *In re Cannavest Corp. Sec. Litig.,* 307 F. Supp. 3d 222, 245 (S.D.N.Y. 2018);

21

*see also In re OSG Sec. Litig.*, 12 F. Supp. 3d 622, 633 (S.D.N.Y. 2014) ("A lack of adequate internal controls may support the inference of scienter."); *Hall v. The Child. Place Retail Stores Inc.*, 580 F. Supp. 2d 212, 233 (S.D.N.Y. 2008).[21] Here, such internal control deficiencies were widespread and worsened over time. For instance, in the 20-F for the period ending December 31, 2018, signed by Ye, the Company identified material weakness in its internal controls related to financial reporting under GAAP, and specifically related to related party transactions. ¶62. In response to this issue, the Company promised to "enhance and improve our internal control over financial reporting" as a remedy. *Id*. Nevertheless, after a year of purportedly implementing such remedial steps, the Company *again* reported a nearly identical internal control deficiency, and even *added* deficiencies. ¶154. Defendants' failure to remedy a known internal control weakness further supports scienter. *Batwin v. Occam Networks, Inc.,* No. CV 07-2750 CAS (SHX), 2008 WL 2676364, at \*13 (C.D. Cal. July 1, 2008).

### 5.    The Resignations Here Support Scienter

The series of resignations here support scienter. Because Board of Directors Member Fan Yuanyuan's resigned shortly after the CCTV report, the timing suggests that he was, at a minimum, aware of the conduct at issue with respect to the Loan Segment. ¶40. So when Jiayan Lu, resigned just two months after the Company's "little r restatement", that timing similarly suggests Lu—who is, or at one point was, a 40% owner in RDD and left to work for an *unnamed related party*—was similarly aware of the related party dealings alleged here. ¶131.[22] A few months after that, on October 3, 2020, Board of Director member James Qun Mi also resigned "due to personal reasons." ¶132. Collectively,

---

[21] *See also Plumbers & Pipefitters Nat'l Pension Fund v. Davis*, No. 1:16-CV-3591-GHW, 2020 WL 1877821, at \*14 (S.D.N.Y. Apr. 14, 2020) ("The Fund has plausibly pleaded that Defendants acted with scienter by attesting to the adequacy of their internal controls in the SOX certifications.").

[22] Given the alleged scheme here, Lu's resignation in particular invites the inference that he may have been more willing to turn a blind eye to the alleged related party sham transactions because he left Jianpu to work at a related party. *Contra* Mot. at n.3, n.8.

such facts support an inference of scienter. *Varghese*, 672 F. Supp. 2d 596, at 608 (resignation of a board member supported a strong inference of scienter); *McIntire v. China MediaExpress Holdings, Inc.,* 927 F. Supp. 2d 105, 126–27 (S.D.N.Y. 2013) (same).

In sum, ***viewed holistically***, ***as the Court must under Tellabs***, Africa alleged an inference of scienter that is at least as compelling as any nonfraudulent inference. 551 U.S. at 323.

## V.     PLAINTIFF ADEQUATELY ALLEGED LOSS CAUSATION

"Loss causation [] is the causal link between the alleged misconduct and the economic harm ultimately suffered by the plaintiff." *Emergent Cap. Inv. Mgmt., LLC v. Stonepath Grp., Inc.*, 343 F.3d 189, 197 (2d Cir. 2003). To adequately plead loss causation, a plaintiff need only "provide a defendant with some indication of the loss and the causal connection that the plaintiff has in mind." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005). Loss causation "is a matter of proof at trial and not to be decided on a Rule 12(b)(6) motion to dismiss." *Emergent*, 343 F.3d at 197. "[C]ourts in this District have historically evaluated loss causation under the notice pleading standard of Rule 8." *Sharette v. Credit Suisse Int'l*, 127 F. Supp. 3d 60, 80 (S.D.N.Y. 2015); *see also In re Henry Schein, Inc. Sec. Litig.*, 2019 WL 8638851, at *25 (E.D.N.Y. Sept. 27, 2019) (collecting cases). Plaintiff has satisfied this burden here. ¶¶6-9, 23-177,186-187.

Defendants' factual arguments are inappropriate at the pleading stage. *See* Mot. at 24-25 (arguing Plaintiffs failed to disaggregate causes for stock drop). Whether multiple factors contributed to a stock drop cannot be decided on a motion to dismiss. *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 189 (2d Cir. 2015). "The requirement, if any, to plead a causal link does not place on Plaintiffs a further pleading obligation to rule out other contributing factors or alternative causal explanations." *Id.*; *see also In re Vivendi Universal, S.A. Sec. Litig.*, 2009 WL 10695884, at *10, 15 (S.D.N.Y. Apr. 6, 2009) ("the chain of causation ... is a matter of proof at

trial...”). Indeed, Defendants’ own binding authority underscores the prematurity of their arguments. *See Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 174 (2d Cir. 2005) (“If the loss was caused by an intervening event, the chain of causation ... is a matter of proof at trial and not to be decided on a Rule 12(b)(6) motion to dismiss.”) (cited at Mot. 24).

Finally, Defendants’ class certification argument (*See* Mot. at 24-25)—disguised as a pleading issue—is both off point and premature. *See City of Livonia Employees’ Ret. Sys. v. Wyeth*, 284 F.R.D. 173, 178 (S.D.N.Y. 2012) (“that [plaintiff] purchased shares after the [purported corrective disclosure] does not disqualify [plaintiff] from serving” as lead plaintiff); *Ross v. Abercrombie & Fitch Co*., 257 F.R.D. 435, 446 (S.D. Ohio 2009) (“It is not inconsistent with the pleadings for Plaintiff to have purchased stock after its price had been deflated by curative disclosures.”).[23] Thus, Africa’s individual trades have no bearing on loss causation for the class—particularly at the pleading stage—as any purported intra-class conflicts should be resolved later.[24]

Here, the fraud was gradually revealed over a series of partial corrective disclosures. On June 15, 2020, the Company filed a notification indicating it could not timely file its Form 20-F and that it was reviewing certain transactions, which caused its stock to drop. ¶7. Then, on February 16, 2021,

---

[23] Defendants rely on *Schuler v. NIVS Intellimedia Tech. Grp., Inc.*, that confronted the “rare circumstance” where a lead plaintiff sold his shares before ***the only*** corrective disclosure in a class period. 2013 WL 944777, at *9-10. Here, there are *multiple* corrective disclosures and was damaged by at least one of them. ¶¶8-9 (discussing a stock drop caused by a partial disclosure on February 16, 2021 which follows his October 21, 2020 purchase).

[24] *See, e.g.*, *Wilson v. LSB Indus., Inc*., No. 15CIV7614RAGWG, 2018 WL 3913115, at *6 (S.D.N.Y. Aug. 13, 2018) (“that he did not hold [] securities throughout the entire class period does not render him atypical or inadequate because his claim relies on the same alleged course of conduct and theory of liability as other class members.”); *In re Symbol Techs*, 2015 WL 3915477, at *7 (“Courts have ... repeatedly recognized that . . . the time at which particular class members purchased their securities. . . relate to damages and do not warrant denial of class certification.”); *Gruber v. Gilbertson*, No. 16CV9727, 2019 WL 4439415, at *3 (S.D.N.Y. Sept. 17, 2019), *modified*, No. 16-CV-09727-JSR, 2021 WL 3524089 (S.D.N.Y. Aug. 10, 2021) (“Defendants[‘] arguments . . . are meritless. Differences in purchase date and the information relied on to make those purchases do not defeat typicality when the purchases were made during the class period.”); *Hoexter v. Simmons*, 140 F.R.D. 416, 422 (D. Ariz. 1991) (“the fact that later purchasers may have relied on statements made after the last date on which Class representatives purchased shares would not prevent the claims of both groups of purchasers from being brought in one action”); *In re VeriSign, Inc*., No. C 02-02270 JW(PVT), 2005 WL 88969, at *4 (N.D. Cal. Jan. 13, 2005) (“Simply because certain class members were injured by misrepresentations that came *after* the Lead Plaintiffs had already acquired VeriSign stock does not mean that the Lead Plaintiffs cannot represent the class.”) (italics in original).

the Company revealed the fraud in its Credit Card Segment by announcing a restatement, which again caused its stock to fall. ¶9. Plaintiff bought his shares before the full revelation of the restatement and held them until February 16, 2021 (ECF 48 at 24; ECF 17-3), thereby damaging him. These allegations are more than sufficient at the pleading stage. *See Gruber v. Gilbertson,* No. 16CV9727, 2018 WL 1418188, at \*7-9 (S.D.N.Y. Mar. 20, 2018) (finding plaintiff was "entitled to test his theories in discovery" after rejecting loss causation argument much like Jianpu's because it "verges on the absurd").

## VI.    CONCLUSION

For the above reasons, the Court should deny Defendants' Motion. But, if the Court were to find that any aspect of the SAC is inadequate, it should grant leave to amend. *See Luce v. Edelstein*, 802 F.2d 49, 56 (2d Cir. 1986).

Respectfully submitted,

DATED: March 13, 2023            **GLANCY PRONGAY & MURRAY LLP**

By:   */s/ Raymond D. Sulentic*
Robert V. Prongay
Ex Kano S. Sams II (*pro hac vice*)
Raymond D. Sulentic (*pro hac vice*)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

-and-

Gregory B. Linkh (GL-0477)
230 Park Ave., Suite 530
New York, NY 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
glinkh@glancylaw.com

**THE LAW OFFICES OF FRANK R. CRUZ**
Frank R. Cruz
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Telephone: (310) 914-5007

*Attorneys for Plaintiff Enrique Africa*

26

## PROOF OF SERVICE

I hereby certify that on this 13th day of March 2023, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

<u>s/ Raymond D. Sulentic</u>

Raymond D. Sulentic