UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

ENRIQUE AFRICA, *individually and on behalf of all
others similarly situated*,

                      Plaintiff,

                -v-

JIANPU TECHNOLOGY INC. et al.,

                    Defendants

-------------------------------------------------------------------X

21-CV-1419 (JMF)

**ECF CASE**
**Electronically Filed**

**ORAL ARGUMENT REQUESTED**

## REPLY MEMORANDUM OF LAW
## IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS
## THE SECOND AMENDED CLASS ACTION COMPLAINT

SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
Scott D. Musoff
Robert A. Fumerton
Vincent M. Chiappini
Argirios J. Nickas
One Manhattan West
New York, New York 10001
Phone: (212) 735-3000

*Attorneys for Defendants Jianpu Technology
Inc., David Ye, and Yilü (Oscar) Chen*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

PRELIMINARY STATEMENT ...........................................................................................1

ARGUMENT ........................................................................................................................2

I. PLAINTIFF FAILS TO PLEAD ANY ACTIONABLE MISREPRESENTATION ...................2

    A.    No Actionable Misrepresentation Regarding Jianpu's Credit Card
         Segment.....................................................................................................................2

    B.    No Actionable Misrepresentation Regarding Databook ...........................................5

II. PLAINTIFF FAILS TO PLEAD SCIENTER .................................................................6

    A.    Plaintiff Fails to Plead Motive and Opportunity.......................................................6

    B.    Plaintiff Fails to Plead Conscious Misbehavior or Recklessness ............................7

III. PLAINTIFF FAILS TO PLEAD LOSS CAUSATION ..............................................8

IV. PLAINTIFF FAILS TO STATE A SCHEME LIABILITY CLAIM.......................................9

CONCLUSION....................................................................................................................10

**TABLE OF AUTHORITIES**

Page(s)

**CASES**

*In re Aqua Metals, Inc. Securities Litig.*,
No. 17-CV-7142, 2019 WL 3817849 (N.D. Cal. Aug. 14, 2019) ....................................10

*Bristol County Retirement System v. Adient PLC*,
No. 20-3846-cv, 2022 WL 2824260 (2d Cir. July 20, 2022)................................................5

*In re Britannia Bulk Holdings Inc. Securities Litig.*,
665 F. Supp. 2d 404 (S.D.N.Y. 2009)................................................................................9

*Brown v. City of N.Y.*,
862 F.3d 182 (2d Cir. 2017)................................................................................................9

*Caiafa v. Sea Containers Ltd.*,
525 F. Supp. 2d 398 (S.D.N.Y. 2007)................................................................................8

*City of Livonia Employees' Retirement System v. Wyeth*,
284 F.R.D. 173 (S.D.N.Y. 2012) ........................................................................................9

*ECA & Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co.*,
553 F.3d 187 (2d Cir. 2009)................................................................................................3

*Fadem v. Ford Motor Co.*,
352 F. Supp. 2d 501 (S.D.N.Y.), *aff'd*, 157 F. App'x 398 (2d Cir. 2005)......................3, 6

*Firefighters Pension & Retirement System v. Student Loan Corp.*,
951 F. Supp. 2d 479 (S.D.N.Y. 2013)................................................................................9

*Ga. Firefighters' Pension Fund v. Anadarko Petrol. Corp.*,
514 F. Supp. 3d 942 (S.D. Tex. 2021) ..............................................................................10

*Gamm v. Sanderson Farms, Inc.*,
944 F.3d 455 (2d Cir. 2019)................................................................................................4

*Hirsch v. Arthur Andersen & Co.*,
72 F.3d 1085 (2d Cir. 1995)................................................................................................2

*Ind. Public Retirement System v. AAC Holdings*,
No. 3:19-cv-407, 2021 WL 1316705 (M.D. Tenn. Apr. 8, 2021) ....................................10

*Kalnit v. Eichler*,
264 F.3d 131 (2d Cir. 2001)................................................................................................7

*Lewis v. YRC Worldwide Inc.*,
No. 1:19-CV-1 (GTS/ATB), 2020 WL 1493915 (N.D.N.Y. Mar. 27, 2020)..................5, 6

*Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Sec.*, LLC,
797 F.3d 160 (2d Cir. 2015)...................................................................................9

*Lorenzo v. SEC*,
139 S. Ct. 1094 (2019)...........................................................................................9

*McIntire v. China MediaExpress Holdings, Inc.*,
927 F. Supp. 2d 105 (S.D.N.Y. 2013).....................................................................8

*In re Merrill Lynch & Co., Inc. Research Reports Securities Litigation*,
272 F. Supp. 2d 243 (S.D.N.Y. 2003).....................................................................8

*In re Montage Technology Group Ltd. Securities Litigation*,
78 F. Supp. 3d 1215 (N.D. Cal. 2015) ...................................................................4

*Morgan v. Sundance, Inc.*,
142 S. Ct. 1708 (2022).........................................................................................10

*In re Perrigo Co. PLC Securities Litigation*,
435 F. Supp. 3d 571 (S.D.N.Y. 2020).....................................................................5

*S.E.C. v. China Northeast Petrol. Holdings Ltd.*,
27 F. Supp. 3d 379 (S.D.N.Y. 2014).......................................................................3

*Salvani v. ADVFN PLC*,
50 F. Supp. 3d 459 (S.D.N.Y. 2014), *aff'd sub nom. Salvani v. InvestorsHub.com,
Inc.*, 628 F. App'x 784 (2d Cir. 2015) ...................................................................9

*Schuler v. NIVS Intellimedia Technology Group, Inc.*,
No. 11 CIV. 2484 KMW FM, 2013 WL 944777 (S.D.N.Y. Mar. 12, 2013) .....................8

*Stratte-McClure v. Morgan Stanley*,
776 F.3d 94 (2d Cir. 2015)....................................................................................6

*Street Clair County Employees' Retirement System v. Acadia Healthcare Co.*,
No. 3:18-CV-988, 2021 WL 195370 (M.D. Tenn. Jan. 20, 2021) .................................10

*Teamsters Local 237 Welfare Fund v. ServiceMaster Global Holdings.*,
No. 2:20-CV-2553, 2022 WL 989240 (W.D. Tenn. Mar. 31, 2022)................................10

*In re UBS AG* Sec. Litig.,
No. 07 CIV. 11225 RJS, 2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012)*, aff'd sub
nom. City of Pontiac Policemen's & Firemen's Retirement System v. UBS A*G,
752 F.3d 173 (2d Cir. 2014)...................................................................................4

*Varghese v. China Shenghuo Pharmaceutical Holdings, Inc.,*
   672 F. Supp. 2d 596 (S.D.N.Y. 2009)..................................................................................8

## PRELIMINARY STATEMENT

Plaintiff fails to cure any of the fatal pleading deficiencies identified by this Court, resorting instead to rank speculation and assertions that are flatly contradicted by the SAC.[1] Because the Opposition confirms that Plaintiff cannot state a claim under the Exchange Act, the SAC should be dismissed in its entirety, this time with prejudice.

First, Plaintiff fails to plead a material misstatement or omission. Plaintiff's speculative claim that RDD was implicated in the Audit Committee-led Review of the Credit Card Segment is belied by his own allegations. Worse still, Plaintiff concedes that RDD **is not a related party**, eviscerating his claim that the rogue employee misconduct was known to or intended to benefit the Individual Defendants. Plaintiff's attempt to plead a duty to disclose the Databook investigation also fails, as he cannot explain why Jianpu's extensive disclosures were insufficient.

Second, Plaintiff's motive allegations are based on the same speculative and demonstrably false assertions regarding RDD and necessarily fail to establish the requisite "strong inference" of scienter. His other post-Class Period allegations do nothing to show that Defendants recklessly disregarded red flags, or to otherwise cure the deficiencies already identified by this Court.

Third, because the timing of Plaintiff's trades confirm that his loss could not have been caused by the revelation of any concealed fact, he fails to plead loss causation.

Finally, the Opposition confirms that Defendants did not waive their opposition to Plaintiff's scheme liability claim. Rather, this claim fails for the same reasons stated in the Opening Brief and this Court's Opinion: namely, Plaintiff fails to allege that Defendants made or disseminated false information with scienter.

---

[1]    Capitalized terms not defined herein have the meanings ascribed to them in the Memorandum of Law in Support of the Motion to Dismiss the Second Amended Complaint ("Opening Brief" or "Br.") (ECF No. 68). "Opposition" or "Opp." refers to the Memorandum of Law in Opposition to Defendants' Motion to Dismiss. (ECF No. 70.)

## ARGUMENT

### I.   PLAINTIFF FAILS TO PLEAD ANY ACTIONABLE MISREPRESENTATION

#### A.   No Actionable Misrepresentation Regarding Jianpu's Credit Card Segment

Despite Plaintiff's attempts to manufacture factual disputes where none exist, (Opp. at 11–14), his speculative and conclusory assertions regarding Jianpu's Credit Card Segment "are belied by more specific allegations of the complaint." *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995). As explained further below, Plaintiff's claim fails even under lenient pleading standards, and thus necessarily fails to state a material misrepresentation with particularity.

First, as the SAC makes clear, the Review of the Credit Card Segment did not involve undisclosed "related-party transactions," as that term is defined by SEC rules and regulations. (*See* SAC ¶ 79 ("Pursuant to FAS 57, related party transactions include those between 'an enterprise and *its* principal owners, management, or members of their immediate families.'").) Rather, the Review found undisclosed relationships between and among *third parties*:

> The Review found that certain transactions involved *third-party agents* (including both upstream agents and downstream suppliers) *with undisclosed relationships*, and some transactions lacked business substance ("questionable transactions"). As a result, certain revenue and associated expenses were inflated or inaccurately recorded in the financial statements. Evidence suggested that certain employees from the Credit Card BU may have known about or been involved in certain of the questionable transactions that resulted in inflated sales commissions to such employees. In relation to the questionable transactions, the Review found that certain employees improperly altered supporting documents that were provided to the Company's external auditor. Other than a business unit head-level employee who has since been terminated, *the Review did not find any evidence that other members of senior management who supervised the Credit Card BU knew about or participated in any of the questionable transactions*. (SAC ¶ 59.)

Hence, the SAC itself confirms that the Review and restatement of Credit Card financials did not involve any related-party transaction. Plaintiff's assertions to the contrary are based on rank speculation and a plain misreading of the disclosures on which he relies. Plaintiff argues that if the undisclosed relationships were only between third parties, "there would be no need to restate

2

Jianpu's revenue." (Opp. at 12.) But Jianpu disclosed the precise reason for the restatement: the "questionable transactions" lacked business substance and involved rogue employee misconduct, including altering supporting documents to increase commissions and mask relationships between upstream agents and downstream suppliers. (SAC ¶ 59.) Contrary to Plaintiff's assertions, the fact that Jianpu restated both revenue and expenses is consistent with the fact that the undisclosed relationships were between demand- and supply-side *third parties*. (*See* Opp. at 12 n.12.)

Second, the SAC and documents cited therein confirm that Related Party A had nothing to do with the restatement of Credit Card financials. Plaintiff ignores that Jianpu's 2019 20-F restated financials for two *separate and unrelated* reasons: (i) *overstated* revenue, costs, and expenses "due to [] questionable transactions with certain third-party agents" in the Credit Card Segment and (ii) *understated* expenses from Related Party A, which had no impact on Credit Card revenue. (Ex. E at F-14–15.) The fact that these adjustments were made in different directions—one up, the other down—confirms that Related Party A was not implicated in the Credit Card Segment Review. (Br. at 15.) Although Plaintiff notes that the restated expenses were later "reclassified" under a new line item added in 2021 due to "business development[s]," (SAC ¶ 129), he pleads no facts showing that the reclassification explains the opposite directions of the separate restatements. Plaintiff's theory is further refuted by the fact that Jianpu also reclassified expenses for 2017 and 2020, when no fraud is alleged to have occurred.[2] (*Id.* ¶ 130.)

---

[2]    For the first time, the Opposition argues that the omission of related-party transactions "is an independent basis to demonstrate falsity." (Opp. at 10.) But the SAC only alleges that Jianpu failed to disclose related-party transactions *within the Credit Card Segment*. (*See* SAC ¶¶ 139–69.) "It is long-standing precedent in this circuit that parties cannot amend their pleadings through issues raised solely in their briefs." *Fadem v. Ford Motor Co.*, 352 F. Supp. 2d 501, 516 (S.D.N.Y. 2005), *aff'd*, 157 F. App'x 398 (2d Cir. 2005). Plaintiff also fails to allege why the misstatement of Related Party A's expenses by RMB 11,586,000—0.6% of Jianpu's total revenues of RMB 1,921,876,000—was material. (Ex. E at F-14–15.) *See ECA & Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 202, 204 (2d Cir. 2009) (affirming dismissal where related-party transactions constituted "a minute fraction of assets"). Plaintiff's cases are inapposite. *See, e.g.*, *S.E.C. v. China Ne. Petrol. Holdings Ltd.*, 27 F. Supp. 3d 379, 391 (S.D.N.Y. 2014) (176 related-party transactions worth $59
*(cont'd)*

3

Third, even if Plaintiff could show that any related party was involved in the "questionable transactions" in the Credit Card Segment (he cannot), he fails to establish that the related party in question was RDD. Plaintiff does not even dispute that RDD is one of Jianpu's VIEs whose financials are consolidated with its own, thereby conceding that it is not a related party at all. (*See* Br. at 13–14; Opp. at 12 n.13.) Plaintiff's arguments regarding RDD's change in ownership and vague allegations regarding Jianpu's "complex" ownership structure miss the point.[3] (*See* Opp. at 13–14.) Plaintiff's concession ***confirms*** that there is no set of facts that could plausibly support his claim that Jianpu's Credit Card revenue was inflated by undisclosed related-party transactions with RDD.

Plaintiff's other attempts to disturb this Court's well-reasoned Opinion based on his prediction about what he "might" be able to argue "on a more developed record," (Opp. at 12 n.13, 14), fly in the face of Rule 9(b) and the PSLRA, which are intended to curtail "abuse in private securities lawsuits," including the filing of "claims of dubious merit" and "the abuse of the discovery process to impose costs so burdensome that it is often economical for the victimized [issuer] to settle." *Gamm v. Sanderson Farms, Inc.*, 944 F.3d 455, 464 (2d Cir. 2019). Nor are the restatements alone sufficient to state a claim. (Opp. at 9–10.) Rather, Plaintiff must plead that the alleged misstatements were material and made with scienter, which he fails to do.[4] (*See infra* § II; Op. at 20 (dismissing "even assuming" materiality of restatement due to failure to plead scienter).)

---

million were material); *In re Montage Tech. Grp. Ltd. Sec. Litig.*, 78 F. Supp. 3d 1215, 1225 (N.D. Cal. 2015) (related-party transactions accounting for 50% and 71% of revenues were material).

[3]   The change in RDD's ownership structure does not change the fact that ***at the time the 2019 20-F was filed***, Related Party A was a "***minority investee*** of a company owned by two founders of the Company," (Ex. E at F-43), while RDD was ***VIE*** owned by two co-founders and the CEO's wife, (*id.* at 32). Plaintiff also cannot dispute that the 2019 20-F made clear that Jianpu "consolidates [RDD's] financial results" with its own. (*Id.* at 31.)

[4]   Plaintiff "concede[s] . . . by silence" that Jianpu disclosed risks relating to its internal controls and auditor and that the challenged statements are not misleading for the reasons articulated by this Court. *In re UBS AG Sec. Litig.*, No. 07 CIV. 11225 RJS, 2012 WL 4471265, at *18 n.18 (S.D.N.Y. Sept. 28, 2012), *aff'd sub nom. City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173 (2d Cir. 2014); (*see* Br. at 15–17 & n.5).

### B.    No Actionable Misrepresentation Regarding Databook

With respect to the Chinese regulatory investigation of Databook's subsidiary, there is no dispute that "Jianpu recorded [a full] impairment once the investigation began, thus alerting investors to the possible financial implications." (Op. at 22.) Plaintiff also admits that Jianpu explained that the impairment was "due to [an] adverse development of [Databook's] business and change of the relevant industry background and market conditions." (SAC ¶ 103.) Because Jianpu disclosed the adverse development and potential financial impact, Plaintiff's claim, at bottom, merely concerns the alleged omission of the investigation itself. But Plaintiff does not (and cannot) dispute that Jianpu had no generalized duty to disclose the investigation. (*See* Op. at 21; Br. at 18–19.) Instead, he argues that a duty arose under GAAP or Item 303. Both theories fail.

Plaintiff's GAAP theory is identical to the one already rejected by this Court, and the SAC gives no reason to disturb the Court's holding. (*Compare* FAC ¶¶ 98–101 *with* SAC ¶¶ 113–17.) The decision to record an impairment rather than a loss contingency is an accounting judgment, and Plaintiff fails to plead that this judgment was either disbelieved when made or based on untrue supporting facts. *See Bristol Cnty. Ret. Sys. v. Adient PLC*, No. 20-3846-cv, 2022 WL 2824260 at *2 (2d Cir. July 20, 2022). Moreover, although GAAP may require "appropriate disclosures" if a loss is "reasonably possible," (SAC ¶ 114), disclosure may not be required for ***uncharged*** claims:

> "Disclosure is not required for a reasonably possible loss when it is "a loss contingency involving an unasserted claim . . . if there has been ***no manifestation by a potential claimant of an awareness*** of a possible claim . . . unless both' (a) '[i]t is considered probable that a claim will be asserted' and (b) '[t]here is a reasonable possibility that the outcome will be unfavorable.'" *Lewis v. YRC Worldwide Inc.*, No. 1:19-CV-1 (GTS/ATB), 2020 WL 1493915, at *11 (N.D.N.Y. Mar. 27, 2020) (quoting *In re Perrigo Co. PLC Sec. Litig.*, 435 F. Supp. 3d 571, 582 (S.D.N.Y. 2020) (quoting ASC 450-20-50-6)).

Here, as the Court correctly observed, "at the time Jianpu recorded the impairment, the investigation had not proceeded to formal criminal charges, and did not do so for another year." (Op. at 22.) Plaintiff alleges no facts to show that Defendants could have predicted the results of

5

the investigation, much less that they knew that charges were "probable," or "reasonably possible" given the information available to them at the time. (SAC ¶ 114.) Thus, he fails to establish that GAAP imposed any duty to disclose the investigation. *See Lewis*, 2020 WL 1493915, at *12 (dismissing Exchange Act claims where plaintiffs "failed to allege facts plausibly suggesting that there was a reasonable possibility that the DOJ's investigation would become a legal action").

Even if GAAP had required disclosure, Plaintiff cannot explain why Jianpu's disclosure did not constitute an "appropriate disclosure" under GAAP. (Opp. at 14). He argues that the investigation was "specific to the Company," (*id.* at 15), but Jianpu disclosed an "adverse development of [Databook's] business," (SAC ¶ 103), thereby alerting investors to the Company-specific issue.

Similarly, because Defendants described the "known uncertainty" and potential impact on their financials, Plaintiff fails to plead a violation of Item 303. (Opp. at 16.) Once again, his assertion that "Defendants did not describe the event or uncertainty" (*id.* at 16–17) is contradicted by the disclosures, which clearly described the reason for the impairment, (SAC ¶ 103). Given the Court's correct holding that "[d]isclosing the investigation . . . would not have significantly altered the 'total mix' of information available," (Op. at 22), Item 303 cannot save Plaintiff's claim from dismissal.[5] *See Stratte-McClure v. Morgan Stanley*, 776 F.3d 94, 100 (2d Cir. 2015) (Item 303 omission "is actionable only if it satisfies [] materiality requirements").

## II.   PLAINTIFF FAILS TO PLEAD SCIENTER

### A.   Plaintiff Fails to Plead Motive and Opportunity

Plaintiff abandons his theory that the drop in Loan Segment revenue provided a motive to

---

[5]   Plaintiff's argument regarding the materiality of the November 2019 consumer data privacy Notice is irrelevant, (Opp. at 17), as this is not the basis of his misstatement claim, which concerns the alleged omission of the Databook investigation. Plaintiff cannot amend his complaint, for the ***third*** time, through his Opposition. *See Fadem*, 352 F. Supp. 2d at 516.

boost revenue in the Credit Card Segment, (*see* Br. at 21–22), and argues instead that "[t]he SAC's allegations that connect the sham transactions [in the Credit Card Segment] with RDD . . . provide a concrete and personal benefit" sufficient to plead motive. (Opp. at 19.) But as shown above, Plaintiff cannot show RDD was implicated in the Credit Card Segment Review. (*Supra* § I.A.)

**B.      Plaintiff Fails to Plead Conscious Misbehavior or Recklessness**

Because Plaintiff fails to plead motive, "the strength of the circumstantial allegations must be correspondingly greater." *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001). Once again, his allegations fall short.

First, Plaintiff's argument that Jianpu inflated revenue in its Credit Card and Advertising Segments to meet 2019 revenue targets, (Opp. at 19–21), fails for the reason already articulated by this Court: "The Credit Card Segment was growing quickly during 2018, prior to any issues with the Loan Segment." (Op. at 26.) Plaintiff's assertion that "sham revenue had not begun growing" in 2018, (Opp. at 20), is belied by the SAC, which clearly alleges that the "questionable transactions" caused 2018 revenue to be overstated by approximately RMB 90 million, (SAC ¶ 60). Moreover, as the Court has already held, Plaintiff's cases are distinguishable because he fails to allege "that Defendants consciously decided to improperly recognize revenue." (Op. at 27.)

Second, Plaintiff repeats the same allegations regarding internal controls already rejected by this Court, (Opp. at 21–22), and like the FAC, the SAC "does not make any showing that the imperfect controls here amounted to more than negligence," (Op. at 27).

Third, Plaintiff argues that the number of so-called "little r restatements" "evinces deliberate recklessness because the restatement clearly raised a red flag that should have drawn the Individual Defendants' attention to such issues in April 2021." (Opp. at 21.) But these "restatements"—the Credit Card restatement, Related Party A restatement, and Databook reversal—were made in the 2019 20-F filed in April 2021. (SAC ¶¶ 62, 111.) Plaintiff alleges no

7

facts to show that the later reclassification of certain expenses due to "business development[s]" occurred because Defendants ignored red flags that existed in April 2021. (*Id.* ¶ 129.)

Finally, "absent any alleged facts linking the two resignations and the alleged fraud, the resignations . . . do not support an inference of conscious misbehavior or recklessness." *Caiafa v. Sea Containers Ltd.*, 525 F. Supp. 2d 398, 414 (S.D.N.Y. 2007). By Plaintiff's own admission, both resignations took place ***over a year after*** Defendants disclosed the employee misconduct in the Credit Card Segment or the Databook investigation in April 2021.[6] (SAC ¶¶ 131–32.)

## III.    PLAINTIFF FAILS TO PLEAD LOSS CAUSATION

To plead loss causation, a plaintiff "must show[] that the economic harm that it suffered ***occurred as a result*** of the alleged misrepresentations." *In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig.*, 272 F. Supp. 2d 243, 261 (S.D.N.Y. 2003) (alterations in original). Courts routinely dismiss complaints where a named plaintiff "sold all his stock well prior to the corrective disclosures," because he "would not even conceivably be able to prove loss causation." *Schuler v. NIVS Intellimedia Tech. Grp., Inc.*, No. 11 CIV. 2484 KMW FM, 2013 WL 944777, at *10 (S.D.N.Y. Mar. 12, 2013) (collecting cases). Here, the undisputed timing of Plaintiff's trades makes it impossible for him to plead loss causation with respect to Databook.[7] (*See* Br. at 24–25; Opp. at 24–25.) Similarly, because Plaintiff did not purchase any shares until after Jianpu first disclosed the Credit Card Review on June 15, 2020, that disclosure could not have caused his loss. (ECF No. 17-3.) The February 2021 disclosure did not reveal any "concealed" risks because Defendants disclosed the precise risks that later materialized. (*See supra* n.4.)

---

[6]    Plaintiff's cases are inapposite. *See Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 672 F. Supp. 2d 596, 603, 608 (S.D.N.Y. 2009) (resignation e-mail detailed board's recklessness); *McIntire v. China MediaExpress Holdings, Inc.*, 927 F. Supp. 2d 105, 117 (S.D.N.Y. 2013) (resignations occurred days after revelation of fraud).

[7]    Plaintiff's claim that his "individual trades have no bearing on loss causation" finds no support in the cases he cites, none of which relates to a motion to dismiss. (Opp. at 24 & n.24.) *See, e.g., City of Livonia Emps.' Ret. Sys. v. Wyeth*, 284 F.R.D. 173, 178 (S.D.N.Y. 2012) (considering timing of plaintiff's purchase at class certification).

Moreover, even at the pleading stage, a "price decline before disclosure may not be charged to defendants." *In re Britannia Bulk Holdings Inc. Sec. Litig.*, 665 F. Supp. 2d 404, 419 (S.D.N.Y. 2009) (collecting cases). At the start of the Class Period on May 29, 2018, Jianpu's ADS price was $46.40, but by June 12, 2020, the last trading day before any alleged corrective disclosure,[8] it had fallen nearly 85% to $7.06. (ECF No. 49-10 at 5, 19.) Plaintiff's failure to consider the "general downward trend" of Jianpu's ADS price further supports dismissal. *Okla. Firefighters Pension & Ret. Sys. v. Student Loan Corp.*, 951 F. Supp. 2d 479, 503 (S.D.N.Y. 2013).

## IV.   PLAINTIFF FAILS TO STATE A SCHEME LIABILITY CLAIM

Defendants did not waive their right to move to dismiss Plaintiff's scheme liability claim. (Opp. at 4–7.) A district court determines waiver in its discretion. *Brown v. City of N.Y.*, 862 F.3d 182, 187 (2d Cir. 2017). "[A] court may dismiss an action *sua sponte* for failure to state a claim 'so long as the plaintiff is given notice of the grounds for dismissal and an opportunity to be heard.'" *Salvani v. ADVFN PLC*, 50 F. Supp. 3d 459, 469 (S.D.N.Y. 2014), *aff'd sub nom. Salvani v. InvestorsHub.com, Inc.*, 628 F. App'x 784 (2d Cir. 2015). Here, the Opening Brief states the grounds for dismissal: (i) even under so-called "relaxed" particularity standards, Plaintiff fails to plead an undisclosed related-party transaction "to benefit the family of Jianpu's CEO" (Opp. at 7–8; *see* Br. at 12–15; *supra* § I.A); and (ii) Plaintiff fails to plead scienter with respect to the "questionable transactions" in the Credit Card Segment (*see* Opp. at 8; Br. at 22–23).[9] Moreover, as this Court previously held, Plaintiff's scheme claim is based on the same alleged

---

[8]   Plaintiff's cases hold only that he need not "rule out other contributing factors" that took place concurrently with the revelation of the alleged fraud. *See, e.g.*, *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec.*, LLC, 797 F.3d 160, 189 (2d Cir. 2015). Here, the price decline occurred long before any alleged misstatement was revealed.

[9]   Because Defendants in fact made these arguments in the Opening Brief, Plaintiff's cases holding that courts need not consider new arguments are inapposite. (*See* Opp. at 5–6.) Further, unlike in *Lorenzo v. SEC*, 139 S. Ct. 1094, 1100 (2019), Plaintiff does not allege that any alleged e-mail alerts actually contained or "disseminat[ed] . . . false or misleading statements," as opposed to simply notifying investors of a public filing. (*See* SAC ¶ 53.) Nor does Plaintiff allege that he used Jianpu's website to opt in to receive any such alert.

misrepresentations underlying his Rule 10b-5(b) claim. (Op. at 29.) The Opening Brief moved to dismiss the SAC "in its entirety," (Br. at 2, 25), including Plaintiff's attempted repackaging of its 10b-5(b) allegations as a supposed scheme liability claim, and thus his scheme liability claim fails for those same reasons Defendants have already discussed at length.[10] Further, Plaintiff admits that the Opening Brief explicitly referenced the scheme claim. (Opp. at 6; *see* Br. at 17 n.5.) In short, Plaintiff's attempt to proceed based on the same deficient allegations already rejected by this Court is at best an opportunistic game of "gotcha" that the PSLRA is designed to eliminate.

## CONCLUSION

For the foregoing reasons and those stated in the Opening Brief, the Complaint should be dismissed in its entirety with prejudice.

---

[10] Plaintiff cites no case in which a court has allowed a scheme claim to survive under such circumstances. *Ind. Pub. Ret. Sys. v. AAC Holdings*, No. 3:19-cv-407, 2021 WL 1316705, at *4, *20 (M.D. Tenn. Apr. 8, 2021) (scheme allegations "go[] beyond just false statements"); *In re Aqua Metals, Inc. Sec. Litig.*, No. 17-CV-7142, 2019 WL 3817849, at *9 (N.D. Cal. Aug. 14, 2019) (similar); *Ga. Firefighters' Pension Fund v. Anadarko Petrol. Corp.*, 514 F. Supp. 3d 942, 951 (S.D. Tex. 2021) (similar); *Teamsters Loc. 237 Welfare Fund v. ServiceMaster Glob. Holdings.*, No. 2:20-CV-2553, 2022 WL 989240, at *14-5 (W.D. Tenn. Mar. 31, 2022) (declining to consider issue where "scheme" mentioned 46 times in Amended Complaint and Defendants' "arguments were aimed . . . with specific reference to Rule 10b-5(b)"); *St. Clair Cnty. Emps.' Ret. Sys. v. Acadia Healthcare Co.*, No. 3:18-CV-988, 2021 WL 195370, at *2 n.1, *8 (M.D. Tenn. Jan. 20, 2021) (unlike here, compelling inference of scienter did exist for scheme claim). *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1713 (2022) relates to waiver of a right to arbitration and is inapposite.

Dated: New York, New York
     April 12, 2023

Respectfully submitted,

  /s/ Robert A. Fumerton          

Scott D. Musoff
Robert A. Fumerton
Vincent M. Chiappini
Argirios J. Nickas
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
Phone: (212) 735-3000
Fax:    (212) 735-2000
scott.musoff@skadden.com
robert.fumerton@skadden.com
vinnie.chiappini@skadden.com
argirios.nickas@skadden.com

*Attorneys for Defendants Jianpu Technology
Inc., David Ye, and Yilü (Oscar) Chen*

11